**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
  jsmith@bursor.com
  ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone; (619)272-7014
Facsimile: (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW GASSER, NORIKO IKEDA, and MELINDA KELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>KISS MY FACE LLC,<br><br>Defendant. | Case No. 3:17-cv-01675-JSC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: June 29, 2017<br>Time: 1:30 p.m.<br>Court: Courtroom No. F, 15th floor |

JOINT CASE MANAGEMENT STATEMENT
CASE NO: 3:16-CV-1675-JSC

Plaintiffs Andrew Gasser, Melinda Kelly, and Noriko Ikeda ("Plaintiffs") and Kiss My Face, LLC ("Defendant"), the parties to the above-titled action (collectively "Parties"), jointly submit this Joint Case Management Statement Pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9 and Order Setting Initial Case Management Conference and ADR Deadlines.

**1.    Jurisdiction & Service**

Plaintiff Andrew Gasser first filed the complaint on March 27, 2017, and service was completed on April 5, 2017. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2)(A).

**2.    Facts**

(a)    *Plaintiffs:*

Defendant Kiss My Face markets itself as a "pioneer" in the area of "natural cosmetics," and "a respected leader in natural body care with over 100 naturally effective bath and body products sold in over 19 countries worldwide." Among other purportedly "natural" products, Defendant makes certain Kiss My Face body lotion, body wash and sunscreen products that contain phenoxyethenol and/or ethylhexylglycerin. In April 2016, the Federal Trade Commission ("FTC") filed complaints against three cosmetics manufacturers for representing that their products were "natural" when they contained one or both of those two ingredients. All three companies agreed to cease marketing the products in question as being "natural."

Plaintiffs purchased the products at issue in reliance on Defendant's misrepresentation that they were "natural" products. They bring this putative class action on behalf of purchasers who bought the same or substantially similar products. Plaintiffs allege claims under California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, New York Gen. Bus. Law §§ 349 and 350, and common law claims for breach of express warranty, unjust enrichment and fraud.

(b) *Defendant:*

Defendant does not label or market its products as "all natural" or "100% natural." Counter to Plaintiffs' explanation of the FTC's April 2016 actions, in each instance the companies had expressly labeled their products as "100% natural" or "all natural." In this case, however, Plaintiffs' specifically admit they relied only on the product labels, not website claims or other advertising. As to the labels, the challenged claims are "nourish naturally with our botanical blends," "obsessively natural kids," and "100% natural mineral." As such, the labels do not expressly or impliedly infer that the products are free of any synthetics whatsoever. Indeed, each of the products contain more than 98% natural or naturally derived ingredients—information that can be ascertained by simply looking at the ingredient list and which was provided to Plaintiffs Gasser and Ikeda before they filed this lawsuit.

There is no dispute no official standard for "natural," "synthetic," or "artificial" exists in the context of cosmetics. FDA's policy for "natural" claims on food has provided the agency would not restrict the use of the term "natural", except for added color, artificial or synthetic substances, and artificial flavors, as defined in 21 C.F.R. § 101.22. FDA explained that "natural" means that "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food *that would not normally be expected to be in the food*." 58 Fed. Reg. 2302, 2407 (Jan.6, 1993) (emphasis added). Under the regulations, "artificial flavor" (21 C.F.R. § 101.22(a)(1) [74 Fed. Reg. 216, Jan. 5, 2009]) and "natural flavor" (*id*., 101.22 (a)(3)), indicate a distinction between "natural" and "artificial" based upon the source from which an ingredient or product is derived (i.*e*., constituents of plant or animal foods) instead of the methods by which it is processed. FDA's policy for "natural" has for the most part remained unchanged since the 1980s.

On November 12, 2015, FDA opened a pre-rule-making docket to request information and comments regarding use of the term in the labeling of food on at least sixteen distinct and highly technical issues including, *e.g*., the "type(s) of ingredients [that] would disqualify…food from bearing the term [natural]"; whether "the manner in which an ingredient is produced or sourced [should] affect whether a food containing that ingredient may be labeled as 'natural'"; whether

"certain production practices used in agriculture, for example, genetic engineering ... be a factor in defining 'natural'"; and whether "the term 'natural' [should] only apply to 'unprocessed' foods [and i]f so, how should 'unprocessed' and 'processed' be defined[?]" <u>Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments</u>, 80 Fed. Reg. 69905-01, 2015 WL 6958210 (Nov. 12, 2015) ("FDA's 'Natural' Request"). The comment period ended in May 2016. In response, scientific, industry, and consumer groups submitted over 7,690 comments offering analysis and proposals for natural, with many of those comments requesting, referencing, or discussing natural in the context of cosmetics and cosmetic ingredients and that FDA expand the scope of its inquiry.

Similarly, in 1974 FTC studied the term's use, issuing a notice of proposed rulemaking that was later terminated in 1983. 39 Fed. Reg. 39,842, 39,849 (Nov. 11, 1974). More recently, in October 2010 when the FTC sought public comment regarding various environmental marketing claims, FTC did not include proposed guidance on natural claims "because it lacked consumer perception evidence indicating how consumers understand 'natural.'" The October 2010 Notice, however, emphasized that the Green Guides general principles apply to natural claims and specifically, "marketers must have substantiation for any environmental benefits claim they make, including implied claims. *See* 75 FR 63552, 63585-63586 (Oct. 15, 2010).

In addition, the BioBased Program, managed by the USDA, is a natural program with a purpose of spurring economic development and provide new markets for farm commodities. Per the program, biobased products are those "composed, in whole or in significant part of biological products or renewable domestic agricultural materials (including plant, animal, and marine materials) or forestry materials," 7 U.S.C. 8101, and provide an alternative to conventional petroleum derived products. Notably, the program recognizes the unique needs of various product categories in setting minimum natural content. Per the program, as applicable to cosmetics, the following are biobased product categories and their minimum content of naturally derived ingredients: Bath Products (61%); Hair Products: Conditioner (61%), Shampoos (78%); Lip Care

Products (82%); Lotions & Moisturizers (59%); and Sun Care Products (53%). Notably, in this case, the challenged Products contain more than 98% naturally derived ingredients.

Due to the lack of federal or state standards, a number of third party "natural" standards have been developed that companies and consumers often look to for evaluating the reasonableness of "natural" claims and for determining whether a naturally derived ingredient should be considered "natural" or "synthetic." The various third party natural standards for cosmetics, like USDA's BioBased Program, take into account the unique context and needs for manufactured cosmetics that are safe for consumers' use, *e.g.*, the need for an effective preservation system to prevent the growth of mold or other pathogens absent effective natural alternatives for preservatives. Notably, similar to the USDA's NOP organic standard for food, nearly all of the third-party standards for natural cosmetics for a "natural" claim mimic the 95% threshold level required for an "organic" claim under the NOP. See 7 C.F.R. 205.301.

All told, even assuming the truthfulness of Plaintiff's depiction of Defendant's marketing claims, and Plaintiff's reliance thereon, there is no regulatory support for Plaintiff's allegations to establish a falsehood. Instead, Plaintiffs' opinions concerning how "natural" a "natural" cosmetic must be to enjoy use of the term "natural" for marketing purposes is ultimately a lack of substantiation claim, for which private citizens are precluded from bringing.

3. **Legal Issues**

(a) *Plaintiff:* The legal issues in this case include: whether Plaintiffs' allegations meet the pleading requirements under Rules 8 and 9(b); whether Plaintiffs have standing to seek injunctive relief; and whether class certification is proper.

(b) *Defendant:* The legal issues are not merely based on the pleadings' standard or whether class certification is proper. Instead, there are numerous, significant legal issues that will need to be determined by this Court as well as the trier of fact including, but not limited to the following: May cosmetic products containing 98% + natural ingredients be labeled with a "natural" claim? May a "100% natural mineral" claim appear on the front label of a sunscreen product containing 100% natural mineral sunscreen active ingredients? Whether Plaintiff's claim

is a lack of substantiation claim in disguise and thus there is no private right of action? Whether Kiss My Face's use of two, generally recognized as safe and effective preservatives that are safe even for sensitive skin users, and contained in the formulation at less than 1% each cause the natural claims to be false? Whether the presence of less than 2% synthetic preservatives, cause the natural claim to be materially misleading? Whether a price premium exists based on varying percentages of "natural" ingredients in a product? Whether Plaintiffs' lack standing to seek injunctive relief?

**4. <u>Motions</u>**

(a) ***Plaintiff:*** Plaintiffs intend to file a motion for class certification. A proposed schedule for that motion is set forth in Section 9 below.

(b) ***Defendant:*** Defendant intends to file a motion to dismiss Plaintiff's First Amended Complaint. Plaintiff stipulates to a 7-day extension to respond to the First Amended Complaint; therefore, the motion to dismiss shall be filed on June 30, 2017, with the Opposition brief due July 21.

Relating to the motion to dismiss, Defendant will also file an administrative motion under Local Rule 7-11 to request 5 additional pages beyond the page limitation requirement. Plaintiffs stipulate to the five-page extension on the motion and Defendant stipulates to a five-page extension on the opposition if Plaintiffs determine additional pages on the opposition are warranted. Plaintiff will file a separate administrative motion in advance of the opposition if Plaintiff deems the additional pages are necessary.

Defendant also anticipates filing a motion for protective order to stay discovery pending the outcome of the motion to dismiss. A proposed schedule for these motions appears in Section 9, below.

To the extent Plaintiffs' claims survive the motion to dismiss, Defendant's anticipate filing a motion for summary judgment.

//

//

**5. Amendment of Pleadings**

On May 31, 2017, Defendant filed a motion to dismiss the original complaint. (Doc. No. 14.) However, that motion was mooted on June 9, 2017, when Plaintiffs filed a First Amended Complaint. (Doc. No. 21.) The First Amended Complaint principally: (1) adds two additional named plaintiffs (Melinda Kelly and Noriko Ikeda), (2) adds additional claims under New York law; (3) and challenges additional sunscreen products not referenced in the original complaint. Plaintiffs do not anticipate further amendments at this time, subject to the outcome on Defendant's anticipated renewed motion to dismiss, due June 30, 2017, per stipulation of the parties to a 7-day extension to the deadline to respond to the first amended complaint.

**6. Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and have agreed to take reasonable and necessary steps to preserve evidence relevant to the issues reasonably evident in this action.

**7. Disclosures**

(a) *Plaintiff:*

No changes to the timing, form or requirements for initial disclosures under Rule 26(a) are warranted. Under Rule 26(a)(1)(C), initial disclosures are due June 16, 2017. Plaintiffs served their initial disclosures on June 13, 2017. Plaintiffs' position is that Defendant's initial disclosures should be served by June 16, 2017, although Plaintiffs are amenable to a reasonable extension of time. There is no legal basis, however, for deferring service of Defendant's initial disclosures until resolution of Defendant's anticipated motion to dismiss, particularly given the limited burden of drafting and serving initial disclosures. *See*, *e.g. Boston Telecomms. Grp. Inc. v. Wood*, 2008 WL 1341168, at *2 (N.D. Cal. Apr. 9, 2008) (rejecting argument that initial disclosures should be served only after resolution of a pending motion to dismiss); *Miejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *5 (E.D. Cal. Feb. 7, 2011) (same).

(b) *Defendant:*

Defendant's object to the timing of the initial disclosures. On June 2, 2017, the parties met

and conferred via telephone in anticipation of the Rule 26 conference. At that time, Plaintiff's informed Defendant's counsel Plaintiff would be filing an amended complaint, which would render the pending motion moot. During the meet and confer, Plaintiff's counsel indicated Plaintiff would be serving his initial disclosures on or before June 16, 2017. Defendant objected stating that initial disclosures were premature given the pending motion to dismiss and Plaintiff's intent on filing an amended complaint. Rather than presenting the matter to this court for resolution, however, and contrary to Plaintiff's representations above, Plaintiff's counsel instead served written discovery requests mere hours following the parties' conference and then followed with service of Plaintiff's initial disclosures on June 16, 2017. Plaintiff's attempt to create a convenient narrative of Defendant's non-compliance essentially has circumvented this Court's ability to resolve the issue in dispute, as it can and must do where, as here, Defendant has objected to the timing and appropriateness of initial disclosures. (Fed. R.Civ.P. 26(a)(1); Fed.R.Civ.P. 16(b)(2))

District courts have "broad discretion" to stay discovery pending the disposition of a dispositive motion. *See Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010). In particular, a district court may "stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002)

Although "[t]he Ninth Circuit Court of Appeals has not announced a clear standard against which to evaluate a request or motion to stay discovery in the face of a pending, potentially dispositive motion," courts in the Northern District of California have applied a two-factor test to evaluate a motion to stay discovery pending resolution of a dispositive motion. *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-cv-02630 JAM KJN, 2011 WL 489743, at *6 (E.D.Cal. Feb. 7, 2011); *see also Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011). "First, the pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed." *Mlejnecky*, 2011 WL 489743 at *6. "Second, the court must determine whether the pending, potentially dispositive motion can be decided absent additional discovery." *Id.*; *accord Hall*, 2010 WL 539679 at *2.

1    If both of the factors are met, the court "may issue a protective order" staying discovery. *Smith v. Levine Leichtman Capital Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153189, at *1 (N.D. Cal. Feb. 11, 2011) (*citing The Pacific Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 220 F.R.D. 349, 352 (N.D. Cal. 2003)).

As a result, Defendant asks this Court to postpone initial disclosures in this matter and to stay written discovery, pending the outcome of the anticipated motion to dismiss. Not only would these initial disclosures potentially be moot as a result of the court's ruling on the motion to dismiss, but also the disclosures and the written discovery would be unduly burdensome, irrelevant, and of absolutely no assistance to Plaintiff for purposes of formulating its opposition to the motion.

**8.   Discovery**

(a)   *Plaintiff:*

Discovery has begun, and the parties agreed to accept service by email. Plaintiffs served their First Set of Requests for Production and First Set of Interrogatories on Defendant on June 2, 2017, and as noted above, Plaintiffs served their initial disclosures on June 13, 2017.

Plaintiffs have already sought or intend to seek discovery regarding, among other things: (i) the number of units sold during the class period; (ii) the amount of revenue derived by Defendant from the sales of the product; (iii) the content of Defendant's advertisements, marketing materials, and other public statements; (iv) exemplars of product packaging throughout the class period; (v) customer complaints regarding the product; (vii) Defendant's refund policies and practices; and (viii) experts and evidence on which Defendant relies to support its defenses.

At the Rule 26(f) conference, Defendant's counsel stated that Defendant's position is that discovery should be stayed indefinitely until the Court rules on Defendant's motion to dismiss. Plaintiffs respectfully disagree for three reasons.

First, the parties conducted their Rule 26(f) conference, discovery is now open, and any request to stay discovery should be made, if at all, on a noticed motion. Filing a Joint Rule 26(f) Report is not the proper procedure for seeking relief from discovery obligations.

Second, Defendant's proposal to stay discovery is contrary to the law. "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Id*. Hence, "district courts look unfavorably upon . . . blanket stays of discovery" like the one Defendant now proposes. *Miejnecky*, 2011 WL 489743, at *5. A stay pending resolution of a motion to dismiss is warranted only where the complaint is so defective on its face that it is "clear and convincing" that the moving party will prevail on its motion. *Seven Springs Ltd. v. Fox Capital Mgmt. Corp.*, 2007 WL 1146607, at *4 (E.D. Cal. Apr. 18, 2007). Defendant cannot meet that burden here because it admitted in its motion to dismiss that "many other 'natural cases' . . . have survived a motion to dismiss." (MTD, at 16:10-11 [Doc. No. 14].)

Third, staying discovery would prevent the productive advancement of this case while the parties wait for a decision on the motion to dismiss. Without discovery, the parties cannot effectively evaluate whether an early settlement is warranted, and thus a stay could needlessly lengthen these proceedings. Further, "discovery would not be wasted even if the Motion to Dismiss is granted since [Plaintiff] could utilize the discovery responses to prepare an amended pleading." *San Francisco Tech. v. Kraco Enterprises LLC*, 2011 WL 2193397, at *3 (N.D. Cal. June 6, 2011).

(b) ***Defendant:***

Contrary to Plaintiff's assertion, although Defendant agreed to stipulate to discovery once discovery began, Defendant specifically objected to the opening of discovery pending the outcome of the motion to dismiss—after all the scope of discovery is shaped by the pleadings and the motion to dismiss is dispositive. During the conference, Plaintiff's counsel did not indicate they would be serving discovery that same day. In addition, Defendants did not ask that the parties stipulate to an "indefinite" stay of discovery. Rather, in light of Plaintiff's recently amended complaint, and Defendant's anticipated motion to dismiss, Defendant believes it is prudent to ask this Court to stay discovery pending determination of that motion. Plaintiff's service of discovery mere hours after

Defendant asked that the parties stipulate to an extension was a blatant attempt to circumvent Defendant's right to seek intervention and assistance from the Court.

The Court has discretion to modify the timing of initial disclosures under Rule 26(a), as well as the extent of discovery. (Fed.R.Civ.P. 16(b)(2); Fed.R.Civ.P. 26(a)). Thus, although Defendant is prepared to file a motion for protective order seeking a stay of discovery pending the outcome of the motion to dismiss the first amended complaint, for the sake of judicial economy, Defendant respectfully asks that the court issue an order staying discovery.

As discussed above under section 7(b), district courts have "broad discretion" to stay discovery pending the disposition of a dispositive motion. *See Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010). A stay is appropriate under the two-factor test followed in the Northern District. *Mlejnecky*, 2011 WL 489743, at *6; *see also Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011). In particular, the motion (to be filed on June 30, 2017) is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed. *See*, *Mlejnecky*, 2011 WL 489743 at *6. Second, the motion can be decided absent additional discovery as it is based on the four corners of the complaint and items appropriate for judicial notice. *See id.*; *accord Hall*, 2010 WL 539679 at *2. Plaintiff will not be prejudiced by a short stay of discovery pending the motion to dismiss; however, Defendant will be prejudiced by having to respond to wasteful and burdensome early discovery. Plaintiffs' attempt to increase the cost of litigation early on should be denied by the Court. As such, good cause exists to grant a temporary stay of discovery pending the motion to dismiss.

### 9. Class Actions

Plaintiffs propose the following schedule for the class certification motion: (1) Plaintiffs file their motion for class certification by March 2, 2018; (2) Defendant files its opposition to class certification by April 2, 2018; and (3) Plaintiffs files their reply in support of class certification by May 2, 2018. Plaintiffs might seek to revise this schedule if they are required to file an amended complaint following the Court's ruling on Defendant's motion to dismiss or the action is otherwise delayed.

**10. Other Motions**

Defendant proposes the following schedule for its anticipated motions: (1) Defendant will file its motion to dismiss Plaintiff's first amended complaint on or before June 30, 2017, Opposition will be due July 21, (2) Defendant anticipates filing its motion for protective order seeking a stay of discovery pending outcome of its motion to dismiss on or before July 3, 2017.

**11. Related Cases**

A copycat case was filed on May 3, 2017, in the Supreme Court of the State of New York, County of Nassau, styled *Maniaci v. Kiss my Face Corp. et al.*, Case No. 603855/2017. Defendant anticipates filing a motion to stay that case pending the outcome of this instant case.

**12. Relief**

Plaintiffs seek compensatory damages, punitive damages, statutory damages, restitution, injunctive relief, pre-judgment interest, attorneys' fees, and costs and expenses.

**13. Settlement and ADR**

Although Plaintiffs are open to engaging in settlement discussions in principle, such discussions are unlikely to be productive until sufficient discovery is completed. Accordingly, rather than stipulating to an ADR process, the parties filed a Notice of Need for ADR Phone Conference (Doc. No. 19.) The ADR conference is scheduled for June 22, 2017.

**14. Consent to Magistrate Judge for All Purposes**

The parties have consented to assignment of this case to a magistrate judge. (Doc. Nos. 6, 13.)

**15. Other References**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

//

**16. Narrowing of Issues**

Plaintiff asserts this case is still in its initial stages and, as such, there are no issues that can be narrowed by agreement or motion at the present time. Defendant believes the issues may be

significantly narrowed, if not disposed of entirely, with the outcome of its motion to dismiss the first amended complaint.

**17. Expedited Trial Procedure**

The parties do not believe an expedited schedule is appropriate for this case.

**18. Scheduling**

Plaintiffs believe it is premature to set a pre-trial schedule other than the schedule for class certification set forth in Section 9 above. Plaintiffs respectfully propose that the Court schedule a case management conference within 30 days after it issues its order on Plaintiffs' motion for class certification and require the parties to meet and confer regarding the remainder of the pre-trial schedule at that time.

**19. Trial**

Plaintiffs have demanded a jury trial, and expect the trial to last approximately 7-10 court days.

**20. Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs are unaware of any non-party interested entities or persons.

**21. Professional Conduct**

Counsel for the parties reviewed the Guidelines for Professional Conduct for the Northern District of California.

**22. Other**

The parties are not presently aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

Dated: June 22, 2017  **BURSOR & FISHER, P.A.**

By: ___/s/ Joel D. Smith___
    Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

Email: ltfisher@bursor.com
        jsmith@bursor.com
        ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone: (619)272-7014
Facsimile: (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

Dated: June 21, 2017          Respectfully submitted,

                                           */s/ Angela Diesch*
                                           DIESCH FORREST APC
                                           Angela L. Diesch
                                           Emma L Forrest
                                           *Attorneys for Defendant*
                                           Kiss My Face, LLC

### ECF Signature Certification

Pursuant to Civil L.R. 5-1(i)(3), I hereby certify that the concurrence in the filing of this document has been obtained from each of the other signatories.

                                                         */s/ Joel D. Smith*
                                                         Joel D. Smith