UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ANDREW GASSER, et al., | Case No. 17-cv-01675-JSC |
|---|---|
| Plaintiffs, | |
| v. | **ORDER RE DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY; PLAINTIFFS' MOTION TO APPOINT COUNSEL** |
| KISS MY FACE, LLC, | |
| Defendant. | Re: Dkt. Nos. 27, 28, 31, 35, 36 |

Plaintiffs allege the labeling of Defendant Kiss My Face LLC's ("KMF") cosmetic products as "naturally nourishing with our botanical blends," "obsessively natural kids," "100% natural mineral advanced protection," and "100% natural mineral hydrating defense" is false and misleading because the products contain phenoxyethanol and/or ethylhexylglycerin. Now pending before the Court is KMF's 12(b)(1) and 12(b)(6) motion to dismiss, KMF's motion to stay, and Plaintiffs' motion to appoint counsel. Having carefully considered the parties' briefing, and having had the benefit of oral argument on August 31, 2017, the Court grants in part and denies in part KMF's motion to dismiss, denies KMF's motion to stay, and grants Plaintiffs' motion to appoint counsel.

**FIRST AMENDED COMPLAINT ALLEGATIONS**

Kiss My Face is a brand of skin care and hygiene products manufactured and marketed by Defendant and sold in drug and grocery stores nationwide. (First Amended Complaint "FAC" ¶ 21.) The FAC discusses the labeling of four KMF products: body moisturizer ("Lotion"), shower gel ("Body Wash"), kids sunscreen ("Sunscreen"), and sun spray lotion ("Sun Spray") (together, the "Products"). (*Id*. ¶ 17.) The front label of every KMF Lotion and Body Wash states "nourish naturally with our botanical blends." (*Id*. ¶ 24.) Some of the KMF Lotion and Body

Wash products are labeled with the alternative phrase "naturally nourishing." (*Id.* ¶ 25.) The KMF Lotion has also been labeled "naturally effective." (*Id.* ¶ 26.)

The front label of KMF Sunscreen states "obsessively natural kids" and provides "100% natural mineral advanced protection." The Sun Spray advertises a "100% natural mineral hydrating defense." (*Id.* ¶ 29.) The Sunscreen and Sun Spray contain a blue and orange background with a green background underneath the statements "100% natural mineral advanced protection" and "100% natural mineral hydrating defense." (*Id.* ¶ 29.)

Based on the front label of each product, Plaintiffs reasonably believed the Products contained only natural ingredients. (*Id.* ¶¶ 27, 30, 32.) Plaintiffs assert the labels are false and misleading to a reasonable consumer because the Products actually contain unnatural ingredients - phenoxyethanol and/or ethylhexylglycerin. (*Id.* ¶¶ 17, 22, 23, 28.) Plaintiffs lost money or property as a result of KMF's violations because: (a) they would not have purchased the Products on the same terms if they knew the Products were made with unnatural and synthetic ingredients; (b) they paid a substantial price premium compared to other skin care and hygiene products due to KMF's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised. (*Id.* ¶¶ 5, 59, 71, 78, 85.) Plaintiffs would purchase the Products again in the future if KMF changed the composition of the Products so that they conformed to their "natural" labeling and marketing. (*Id.* ¶¶ 11, 13, 15.)

Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class"). (*Id.* ¶ 34.) Plaintiffs Gasser and Ikeda also seek to represent a subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). (*Id.* ¶ 35.) Plaintiff Kelly also seeks to represent a subclass of all persons in New York who purchased the Products during the class period (the "New York Subclass"). (*Id.* ¶ 36.)

**DISCUSSION**

KMF moves to dismiss pursuant to Rule 12(b)(1) on standing grounds and pursuant to 12(b)(6) for failure to state a claim.

**I. Standing**

For the court to exercise proper subject matter jurisdiction over an action, the parties must have standing. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000).

KMF argues Plaintiffs lack standing because: (1) the FDA is charged with the oversight of cosmetics and is pursuing rulemaking efforts regarding the term "natural" and as such the suit raises a political question; (2) there is no private right of action for lack of substantiation claims and Plaintiffs' complaint is a lack of substantiation claim in disguise; and (3) Plaintiffs cannot establish the likelihood of future injury because they would not purchase the Products again if the offensive unnatural ingredients remain.

**A. Political Question**

"'Political questions' are controversies which revolve around policy choices and value determinations constitutionally committed to the Congress of the Executive Branch, and are not subject to judicial review." *United States v. Mandel,* 914 F.2d 1215, 1222 (9th Cir. 1990). The doctrine is "a jurisdictional limitation imposed on the courts by the Constitution, and not by the judiciary itself." *Corrie v. Caterpillar, Inc.,* 503 F.3d 974, 981 (9th Cir. 2007). Thus, "if a case presents a political question, [the court] lack[s] subject matter jurisdiction to decide that question." *Id.* Six factors are relevant to whether a case is a non-justiciable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question[.]

*Mandel,* 914 F.2d at 1222. A case "[i]mplicating any one of these factors renders a question 'political' and thus nonjusticiable." *Id.*

None of the factors are present. There is no "constitutional commitment" to the FDA regarding what is misleading in the context of consumer products. Instead, several courts in this district have adjudicated false advertising claims of "natural" products. *See, e.g., Ries v. Arizona*

*Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. Nov. 12, 2007) (plaintiffs' allegation that Arizona Iced Tea is "all natural" survived summary judgment); *Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104, at *5-6 (N.D. Cal. Nov. 3, 2015) (denying motion to dismiss challenging the plaintiffs' allegation that they would not have bought Seventh Generation's products labeled "natural" if they had known they were not natural); *Larsen v. Rader Joes' Co.*, 917 F.Supp.2d 1019, 1023-25 (N.D. Cal. Jan. 9, 2013) (denying motion for judgment on the pleadings on claims based on the plaintiffs' allegation that Trader Joe's alleged labeling, marketing and sale of "All Natural" and "100% Natural" products was false because they contained one or more synthetic ingredients as defined by the FDA). And last year the Ninth Circuit weighed in on whether a "natural" label is misleading because the product contained unnatural ingredients. *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed.Appx. 531, 533 (9th Cir. Sep. 30, 2016) (ruling that a trier of fact could conclude "all natural fruit" is misleading to the reasonable consumer). It is thus unsurprising that KMF does not cite a single case where the political question doctrine was applied to false advertising or fraud.

KMF nonetheless argues that the FDA is charged with the oversight of cosmetics and is pursuing rulemaking efforts regarding the term "natural." However, the FDA requested information and public comment on the use of the term "natural" in the labeling of food products, not cosmetics. (Dkt. No. 29-5 at 1.) Further, public comment closed on February 10, 2016, and the FDA has yet to issue any new rules regarding the use of the term natural. (*Id*.) The FDA has not stated that it is pursuing rulemaking efforts, and even if it were, there is no assurance that the FDA would revoke its current definition of natural or that any rulemaking would apply to the allegations here. (Dkt. No. 35 at 36) ("even if we were to embark on a public process to define "natural" in the context of food labeling, there is no assurance that we would revoke, amend, or add to the current policy, or develop any definition at all.") Accordingly, KMF's motion to dismiss pursuant to the political question doctrine is denied.

## B. Lack of Substantiation Claim

KMF next argues there is no private right of action for lack of substantiation claims and that Plaintiffs' complaint is a lack of substantiation claim in disguise. "[B]oth private persons and

4

prosecuting authorities may sue to enjoin false advertising and obtain restitution." *National Council Against Health Fraud, Inc. v. King Bio Pharmeceuticals, Inc., ("King Bio")*, 107 Cal.App.4th 1336, 1344 (2003). "When they bring such actions, both private persons and prosecuting authorities bear the burden of proving the advertising claims to be false or misleading." *Id*. "Prosecuting authorities, but not private plaintiffs, have the administrative power to request advertisers to substantiate advertising claims before bringing actions for false advertisement, but the prosecuting authorities retain the burden of proof in the false advertising actions." *Id*.: *see also Kwan v. SanMedica International*, 854 F.3d 1088, 1094-1095 (9th Cir. 2017) (holding that California law does not recognize a private cause of action for lack of substantiation claims); *Chavez v. Nestle U.S.A, Inc.*, 511 Fed.Appx. 606, 607 (9th Cir. 2013) ("[P]rivate plaintiffs are not authorized to demand substantiation for advertising claims.").

KMF's lack of substantiation argument fails for two reasons. First, it is brought as a 12(b)(1) motion for lack of subject matter jurisdiction because KMF relies on documents outside the complaint. However, the argument has nothing to do with this Court's constitutional authority to hear this case. For this reason alone the motion on this ground must be denied.

Second, Plaintiffs' claim is not based on a lack of substantiation. They do not allege the terms "naturally nourishing with our botanical blends," "obsessively natural kids," "100% natural mineral advanced protection," and "100% natural mineral hydrating defense" are misleading because KMF failed to conducts tests before marketing their products; instead, Plaintiffs' false advertising claim is premised on the allegation that the statements are false because KMF's ingredients are not natural. *See Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (N.D. Cal. Nov. 1, 2012) (there is "a distinction between a claim about a product that has been disproved (which is closer to an affirmative misrepresentation) and a claim about a product for which there's no proof at all (which is closer an unsubstantiated claim")).

Accordingly, KMF's lack of substantiation argument fails.

### C. Standing to Pursue Injunctive Relief

KMF also argues Plaintiffs lack standing to pursue injunctive relief because Plaintiffs cannot establish a likelihood of future injury as they would not purchase the Products again if the

unnatural ingredients remain. The Court agrees.

To establish standing, a plaintiff must show that "(1) he suffered an injury in fact; (2) the injury is 'fairly traceable' to the challenged conduct; and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). In addition, to establish standing for prospective injunctive relief, a plaintiff must demonstrate that he not only "suffered or is threatened with a 'concrete and particularized' legal harm" but also that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Service, Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates,* 511 F.3d at 985. Plaintiff bears the burden of establishing Article III standing. *D'Lil v. Best Western Encina Lodge & Suites,* 538 F.3d 1031, 1036 (9th Cir. 2008).

Plaintiffs have not shown they face a risk of future harm. Plaintiffs are now aware the Products contain phenoxyethanol and/or ethylhexylglycerin and as such cannot allege that they would be fraudulently induced to purchase the same Products again in the future. Plaintiffs allege that they would purchase the Products again if KMF changed the composition so that they conformed to their "natural" labeling and marketing (FAC ¶¶ 11, 13, 15); however, this Court cannot force KMF to change the composition of its products. Instead, the injunctive relief is limited to having the label "accurately reflect the product's contents." *Coe*, 2017 WL 476407 at *2 (internal citations omitted); *see also Anderson v. Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1235 (N.D. Cal. 2015) (the plaintiff's allegation "that 'she would purchase the product in the future if it were properly labeled and did not contain non-natural ingredients' is completely inconsistent with her theory of liability, and with any injunctive relief that could actually issue in this case. Based on this lawsuit, Defendant could not be ordered to modify its manufacturing process to remove all unnatural ingredients from its products because Plaintiff has not alleged an injury from ingesting those ingredients.").

Plaintiffs' insistence that the FAC allegations meet the requirements adopted in *Jou v. Kimberly Corp.*, 2013 WL 6491158, (N.D. Cal. Dec. 10, 2013) is unpersuasive. In *Jou*, the plaintiffs did not meet their burden to plead injunctive relief because they "did not identify any

6

allegation that suggests they will purchase the same products again." *Jou*, 2013 WL 6491158 at *4. The same applies here. Plaintiffs do not allege that they would purchase the same Products again; instead, they allege they would purchase a different product—one without the synthetic ingredients. Similar to *Jou*, Plaintiffs have failed to allege they would purchase the same Products with the same synthetic ingredients even if properly labeled; thus, they have not established standing for injunctive relief. However, a recent Ninth Circuit case suggests they may be able to do so. *Davidson v. Kimberly-Clark, Corp.*, 2017 WL 4700093 * 7-10 (9th Cir. Oct. 20, 2017). Accordingly, KFM's motion to dismiss the injunctive relief claim is granted with leave to amend.

## II. Failure to State a Claim 12(b)(6)

A complaint fails to state a claim upon which relief may be granted if the plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiffs bring eight claims: (1) California's Consumers Legal Remedies Act ("CLRA"); (2) California's Unfair Competition Law ("UCL"); (3) California's False Advertising Law ("FAL"); (4) Deceptive Acts Or Practices, New York Gen. Bus. Law ("GBL") § 349; (5) False Advertising, GBL § 350; (6) breach of express warranty; (7) unjust enrichment; and (8) fraud. (*Id.* ¶¶ 43-94.) KMF moves to dismiss all eight claims.

KFM argues Plaintiffs' CLRA, UCL, FAL, and GBL claims must be dismissed because: (a) Plaintiffs failed to allege a plausible deception under the reasonable consumer standard; (b) the statements are mere puffery; and (c) the claims lack the specificity required under Rule 9.

### A. Reasonable Consumer Standard

KMF argues Plaintiffs have failed to identify a plausible misrepresentation because Plaintiffs unreasonably interpret the terms "nourish naturally with our botanical blends," "obsessively natural kids," and "100% natural mineral advanced protection" as representations that the Products contain entirely natural ingredients.

The CLRA, FAL, UCL, and GBL utilize a "reasonable consumer standard." *Freeman v.*

*Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2nd Cir. 2015) (the New York Court of Appeals adopted "an objective definition of misleading" where the alleged act is "likely to mislead a reasonable consumer acting reasonably under the circumstances"). Under the reasonable consumer standard, the plaintiff must "show that members of the public are likely to be deceived." *Freeman*, 68 F.3d at 289. Reasonable consumers should not be expected to "look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939. The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks and citation omitted). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)).

It is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements "100% natural" or "all natural" or "natural" together with other terms implying "all natural" to mean that a product does not contain any non-natural ingredients. *See Williams*, 552 F.3d at 938-939 ("the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural"); *Balser v. Hain Celestial Group, Inc.*, 640 Fed.Appx.694 (9th Cir. 2016) ("the statements that the products were "natural" and "100% vegetarian" could be taken as a claim that no synthetic chemicals were in the products, a claim the complaint alleges, in detail, is false").

In light of this caselaw, the Court cannot conclude as a matter of law that a reasonable consumer would not interpret the "100% natural mineral advanced protection," and "100% natural mineral hydrating defense" statements as meaning that all the ingredients in the Sunscreen and Sun Spray are natural, a representation which Plaintiffs plausibly allege is false. The term "100% natural mineral advanced protection" could confuse a reasonable consumer in regards to whether

8

the "natural mineral" content of the products is the only part that is 100% natural, or whether the entire product is 100% natural. In this context, the reasonableness of Plaintiffs' understanding of the word "natural" is a question not appropriate for resolution on a motion to dismiss. *See Williams*, 552 F.3d at 938.

The statements "nourish naturally with our botanical blends" and "obsessively natural kids," on the other hand, are not likely to deceive a reasonable consumer. The Court is unaware of any case which has held that use of the adverb "naturally" is sufficient itself to deceive a reasonable consumer. "Nourish naturally with our botanical blends" is not an affirmative representation that the Body Wash and Body Lotion are entirely natural; instead, a reasonable consumer would interpret the statement as meaning the product contains natural ingredients—a true statement. Thus, Plaintiffs have not alleged facts sufficient to plausibly suggest that a reasonable consumer would interpret "naturally nourishing" to mean the product does not contain a single synthetic ingredient. Similarly, "obsessively natural kids," is displayed with "KIDS" in all capitals and in larger font, referring to kids being natural, not the product itself. This marketing is targeted towards parents who consider their kids "natural" and a reasonable consumer would not interpret the statement to mean that the product itself does not contain any synthetic ingredients. Again, while this statement might be false if the product did not contain any, or even mostly, natural ingredients, the allegations here are that the statements are false because the products contained a synthetic preservative.

Accordingly, KMF's motion to dismiss the CLRA, FAL, UCL, and GBL claims is granted as to the "nourish naturally with our botanical blends" and "obsessively natural kids" statements and denied as to the "100% natural mineral advanced protection" and "100% natural mineral hydrating defense" statements.

**B. Puffery**

KMF relatedly argues Plaintiffs' CLRA, FAL, UCL, and GBL claims fail because the terms "nourish naturally with our botanical blends" and "obsessively natural kids" are nonactionable generalized statements which amount to nonactionable puffery.

"Advertisements that amount to mere puffery are not actionable because no reasonable

9

consumer relies on puffery." *Stickrath v. Glbalstar, Inc.*, 527 F.Supp.2d 992, 998 (N.D. Cal. 2007) (internal quotation marks and citation omitted). "The distinguishing characteristics of puffery are 'vague, highly subjective claims as opposed to specific, detailed factual assertions.'" *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. Jan 21, 2009) (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. Jun. 13, 1994)). The Ninth Circuit explained in *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) that "[t]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." As a result, "[a]dvertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id*. The Court is not persuaded that these statements are mere puffery. As explained above, a reasonable consumer could interpret them to mean that a product is mostly natural.

### C. Rule 9

KMF next argues Plaintiffs' CLRA, FAL, UCL, and GBL claims fail because they lack specificity as required by Federal Rule of Civil Procedure 9(b). As the Court has determined that as alleged in the FAC a reasonable consumer would not interpret the terms "nourish naturally" or "obsessively natural KIDS" to mean the products are 100% natural, it will address the 9(b) argument in the context of the other representations.

"Rule 9(b) demands that the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). In particular, the complaint must include specificity regarding the charged conduct, including the "who, what, when, where, and how." *Reed v. Wells Fargo Bank,* 2011 WL 4802542, at *3 (N.D. Cal. Oct. 11, 2011). When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994).

KMF repeats its reasonable consumer arguments, arguing Plaintiffs do not allege how or

why the phrase "100% natural mineral defense" is false or misleading. KMF asserts Plaintiffs have not alleged how or why the preservatives do not make the products natural, why preservatives are not expected to be found in manufactured cosmetic products, what percentage of preservatives are in the products, how KMF's labeling fails to comply with federal regulations, or how KMF knew its labeling was false given there is no standard for the term "natural."

Plaintiffs meet the heightened Rule 9 pleading standard. Plaintiffs identified KMF as the party that made the allegedly misleading statements. (FAC ¶ 17.) Plaintiffs identified what statements were misleading and where they were located - the statement "100% natural mineral defense" is located on the front label of the products. (FAC ¶¶ 2, 23-25, 29.) Plaintiffs have also established when – "at all times during the last four years," and how the statements were misleading – because the products contain phenoxyethanol and/or ethylhexylglycerin. (FAC ¶¶ 4-5, 26, 28, 30-31.)

KMF cannot rehash its reasonable consumer standard arguments. The issue under Rule 9 is not whether the pleading's allegations are reasonable, but whether the pleading's allegations are made with specificity. Because Plaintiffs identified the "who, what, where, when, and how," Plaintiffs meet the heightened Rule 9 standard. *See* Reed, 2011 WL 4802542, at *3.

### D. Express Warranty

#### i. *California Law*

"A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Allen v. ConAgra Foods, Inc.,* Case No. 13–cv–01279–JST, 2013 WL 4737421, *11 (N.D. Cal. Sept. 3, 2013).

First, Plaintiffs have pled breach of express warranty for the term "100% natural mineral advanced protection" because the statement constitutes a description of the goods. Other courts in this Circuit have concluded that such "natural" statements can constitute express warranties. *See, e.g.*, *Bohac v. General Mills, Inc.*, 2014 WL 1266848, at *9 (N.D. Cal. Mar. 26, 2014) ("100% natural" was an affirmative representation sufficient to state an express warranty claim); *Viggiano*

11

*v. Johnson & Johnson*, 2015 WL 12860480, at *4 (C.D. Cal. Jun. 12, 2015) (plaintiff sufficiently pled express warranty because defendants' packaging represented the product as 100% natural); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (plaintiffs adequately stated a claim that the designation "all natural" constituted a description of potato products); *Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014) ("all natural" on Whole Foods' packaging constituted affirmation of fact).

Second, the statement is part of the bargain because Plaintiffs allege that they would not purchase the KMF Sunscreen and Sun Spray on the same terms if they knew the truth about the unnatural ingredients. (FAC ¶ 85.)

Finally, the warranty was breached because the KMF Sunscreen and Sun Spray contain ingredients that are unnatural and synthetic and "do not have the characteristics, uses, or benefits as promised." (FAC ¶¶ 80-85.) As such, KMF's motion to dismiss Plaintiff's breach of express warranty claim as to the term "100% natural mineral hydrating defense" is denied. However, the express warranty claim as to the other terms, "nourish naturally with our botanical blends" and "obsessively natural kids," fails for the reasons discussed above –no reasonable consumer would attribute these statements as affirmations that the products are all natural. As such, KMF's motion is granted as to "nourish naturally" and "obsessively natural kids."

        ii.      *New York Law*

The New York requirements for express warranty are identical to California law. "[A]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. Section 2-313(1)(a)(b). Furthermore, "[a] seller's warranty…extends" to any foreseeable user "who is injured in person by breach of the warranty." N.Y. U.C.C. Section 2-318. As described above, Plaintiffs pled a claim for the term "100% natural mineral hydrating defense" but the terms "nourish naturally with our botanical blends" and "obsessively natural kids" fail because no reasonable consumer would attribute these statements as affirmations that the products are all natural.

KFM nonetheless makes three arguments as to why Plaintiffs' breach of warranty claim fails under New York Law. First, KFM asserts the parties are not in privity. However, "[t]he New York Court of Appeals has dispensed with the requirement of privity in cases involving breach of an express warranty where only economic damages are alleged." *Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *6 (S.D.N.Y. Jul.20, 2016) (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 16 (1962), *Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 739 (2d Dep't 2008), and *Murrin v. Ford Motor Co.*, 756 N.Y.S.2d 596, 597 (2d Dep't 2003)). As the New York Court of Appeals concluded:

> The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to old and out-moded technical rules of law which, if observed, might be productive of great injustice. The manufacturer unquestionably intends and expects that the product will be purchased and used in reliance upon his express assurance of its quality ... [h]aving invited and solicited the use, the manufacturer should not be permitted to avoid responsibility, when the expected use leads to injury and loss, by claiming that he made no contract directly with the user.

*Codling v. Paglia*, 32 N.Y.2d 330, 339 (1973) (citing *Randy Knitwear*). Moreover, *Randy Knitwear* remains controlling precedent despite the subsequent enactment of the UCC because the UCC commentary explains "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." N.Y. U.C.C. § 2-313, cmt.2 (discussing express warranties); *see also Mahoney*, 2016 WL 3951185 at *6. Thus, privity is not required.

Second, KMF argues the cases Plaintiffs cite are unpersuasive because the advertising involved not just labeling, but also website and Facebook advertising. However, KMF fails to address *Weisblum v. Prophase Labs Inc.*, where the plaintiffs specifically relied upon the product packaging which stated that the product was "clinically proven" to reduce cold symptoms. 88 F.Supp.3d 283, 287, 295 (S.D.N.Y Feb. 20, 2015). Moreover, the Court is unaware of any authority that reliance upon labeling alone is not enough and that additional forms of advertising are required.

Third, KMF contends pre-suit notice is required and is not alleged. While New York law

13

requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy," N.Y. U.C.C. § 2–607(3)(a), none of the cases cited by KMF discuss this requirement. *See Koenig v. Boulder Brands Inc.*, 995 F.Supp.29 274, 290 (S.D.N.Y Jan. 31, 2014); *Ebin v. Kangardis Food Inc.*, 2013 WL 6504547, at *6, (S.D.N.Y. Dec. 11, 2013); *Dibartolo v. Abbott Laboratories*, 914 F.Supp.2d 601, 625 (S.D.N.Y Dec. 21, 2012).

The requirements regarding notice are, however, discussed in note four of N.Y. U.C.C. § 2–607:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (§ 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

*Id*. In their opposition to the motion to dismiss, Plaintiffs submit evidence that they sent KMF two demand letters dated February 3, 2017 (Dkt. No. 29-1), and April 25, 2017. (Dkt. No. 20-4.) The February 3 letter was submitted on behalf of Andrew Glasser and "all other persons similarly situated," and stated that the KMF products were mislabeled as "natural" which "breached an express warranty to those who purchased the products." (Dkt. No. 29-1 att 1.) The April 25 letter states that "Noriko Ikeda is acting on behalf of a class defined as all persons in the United States who purchased Kiss My Face Products," that the products were labeled natural but not advertised or sold in a manner consistent with that claim, and that failure to respond would result in a lawsuit for damages pursuant to various California laws and the U.C.C. (Dkt. No. 29-4 at 3-4.) However, because neither letter is alleged or referred to in Plaintiffs' First Amended Complaint the Court cannot consider them. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (generally district courts may not consider "any material beyond the pleadings"). Accordingly, KMF's motion to dismiss Plaintiffs' breach of express warranty claim is granted with leave to amend.

14

### E. Unjust Enrichment

The Ninth Circuit has recognized that while "there is not a standalone cause of action for 'unjust enrichment'" in California, the term "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). As such, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (internal quotations and citations omitted). Plaintiffs allege that they are entitled to relief because KMF made "misrepresentations about the Products, which caused injuries to Plaintiffs" and that KMF was "unjustly enriched" as a result. FAC ¶ 89. "This straightforward statement is sufficient to state a quasi-contract cause of action." *Astiana*, 783 F.3d at 762.

KMF's argues that an underlying contract claim is necessary to bring an unjust enrichment claim. Not so. The Ninth Circuit recently held in an unpublished but citable decision that under California law unjust enrichment may be pled as an "independent claim" and applied this holding to the labeling of nutrient content in Gerber baby food products. *See Burton v. Gerber Products Company*, 2017 WL 3016740 (9th Cir. Jul. 17, 2017) ("the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment") (citing *Hartford Cas. Insurance Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 998, 1000 (2015)). KMF's motion to dismiss Plaintiffs' unjust enrichment claim is therefore denied.

KMF's reliance on *Goldman v. Bayer AG*, 2017 WL 3168525 (N.D. Cal. July 26, 2017) is misplaced. There the court dismissed because the defendant had not engaged in any deceptive conduct and therefore did not do anything unjust. *Id.* at *9. Here, in contrast, Plaintiffs have alleged an actionable misrepresentation and thus that it would be unjust for KMF to retain the profits from the sale.

### III. Punitive Damages

Defendants argue that to recover punitive damages Plaintiffs must plead facts sufficient to show that a defendant acted with oppression, fraud or malice. Defendants apply the wrong standard for evaluating the sufficiency of Plaintiffs' pleadings in federal court. In California state

1 court, a plaintiff must plead facts to support the conclusion that the defendant acted with malice,
2 fraud, or oppression in order to state a claim for punitive damages. Cal. Civ. Code § 3294(a). In
3 federal court, the Federal Rules of Civil Procedure provide the pleading standard for cases.
4 Pursuant to Rule 9(b), "malice, intent, knowledge, and other conditions of the mind may be
5 alleged generally."

Thus, plaintiffs need not plead "any particularity in connection with an averment of intent, knowledge or condition of the mind." *In re GlenFed Sec. Litig.,* 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd,* 642 F.3d 1207, 1216 (9th Cir.2011). Accordingly, "in federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Clark v. Allstate Ins. Co.,* 106 F.Supp.2d 1016, 1019 (S.D. Cal. July. 27, 2000). Here, the complaint states: "[d]efendant knew that consumers will pay more for a product labeled "natural," and intended to deceive Plaintiffs and putative class members by labeling KMF Lotion, Body Wash, and Sunscreen as purportedly natural products." FAC ¶ 33. This short and plain statement of fraudulent intent is sufficient to support Plaintiffs' pleading of punitive damages.

**IV.    Motion to Stay**

Finally, KMF moves to stay this case pursuant to the primary jurisdiction doctrine arguing that the FDA will issue regulations governing "natural" food labeling that will also govern cosmetics. A district court has the discretion to stay or dismiss a case under the doctrine of primary jurisdiction. *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993). Primary jurisdiction is a prudential doctrine that permits courts to determine "that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008). In evaluating primary jurisdiction, courts consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise

16

or uniformity in administration." *Syntek Semiconductor Co., Ltd. v, Microchip Technology Inc.,* 307 F.3d 775, 781 (9th Cir. 2002). "Efficiency" is the "deciding factor" in the primary jurisdiction analysis. *Rhoades v. Avon Prods., Inc.,* 504 F.3d 1151, 1165 (9th Cir. 2007).

KMF's motion to stay is denied. The FDA's November 12, 2015 Request for Comments concerns "the use of the term 'natural' in the labeling of human food products" but makes no reference to cosmetics. (Dkt. No. 35 at 6-7.) Further, although the FDA asked for comment on whether it should define the term "natural" through rulemaking, there is no certainty that the FDA will indeed define the term, or that it will apply to cosmetics in addition to food products. (*Id*. at 9.)

Moreover, even if the FDA issues a new rule regarding "natural" labeling in cosmetics, there is no evidence regarding when this will occur, nor any showing that such a rule is critical to the Court's competency in ruling on this case. *See Astiana*, 783 F.3d at 760–61 ("[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.") Nor are "natural" labels in the context of misrepresentation class actions a limited circumstance that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark,* 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs.,* 277 F.3d 1166, 1172 (9th Cir.2002)). And a stay would not contribute to the efficiency of these proceedings because the Court can come to a determination without the issuing of such a rule.

Defendant cites *Kane v. Chobani LLC*, 645 Fed.Appx. 593 (9th Cir. 2016) to argue the "proverbial pendulum" has swung and that courts are now staying matters on the basis of primary jurisdiction. However, *Kane* concerned the labeling and sale of yogurt, not cosmetics. *Id*. at 594. Furthermore, in addition to the word "natural," the yogurt contained the terms "evaporated cane juice," which the FDA stated it would issue final guidance on by the end of 2016. The Ninth Circuit concluded that staying the case eight months until the FDA issued a definition material to the product would not needlessly delay the case. Here, in contrast, there is no pending proceeding or date in sight, and no evidence that a definition for "natural" is being contemplated for cosmetics. KMF's motion to stay the action is denied.

17

**V.     Judicial Notice**

Plaintiffs request that Court take judicial notice of four items related to its opposition to KMF's motion to stay: the use of the term "natural" in the federal register, four district court cases, the FDA Small Business & Homemade Cosmetics Fact Sheet from the FDA website, and two FDA letters. Plaintiffs' motion for judicial notice is granted. Judicial notice of the Federal Register is required under 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed . . . ."). Courts will take judicial notice of the dockets and records of other cases. *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n. 3 (9th Cir. 2005). Government agency websites, and the information contained therein, are matters of public record appropriate for judicial notice under Rule 201. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 n.2 (9th Cir. 2009) (taking judicial notice of consumer fact sheet on FCC website). Official letters from government agencies, including the FDA, are subject to judicial notice and the letters in question are already records of other cases. *See Astiana*, 783 F.3d at 762 (March 7, 2013 FDA letter was filed per judicial notice).

KMF moves to judicially notice exhibits 5-14 to the Disch Declaration. The Court takes judicial notice of exhibit 5 as it is a document from the FDA website concerning the word "natural," and exhibit 8, a decision from the FTC. The Court also takes judicial notice of Exhibits 6, 7, and 14 regarding the USDA's "BioPreferred Products Preference Program" and the European Union's phenoxyethanol regulations. Exhibits 9-13 are documents related to private third party labeling programs and standards. Such documents are improper for judicial notice as the Court cannot be certain of their accuracy. *See* Fed. R. Evid. 201(b)(2).

**VI.    Motion to Appoint Counsel**

Plaintiffs move to appoint interim class counsel pursuant to Federal Rule of Civil Procedure 23(g)(3). (Dkt. No. 36.) KMF filed a statement of non-opposition, and reserved its right to oppose class certification. (Dkt. No. 45.) Given Bursor & Fisher's experience representing plaintiffs in class actions and KMF's non-opposition to their appointment, the Court grants Plaintiffs' motion.

**CONCLUSION**

For the reasons described above, KMF's 12(b)(1) motion to dismiss Plaintiffs' claim for injunctive relief is granted with leave to amend. In all other respects the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied.

KFM's 12(b)(6) motion to dismiss is granted with leave to amend as to the terms on the KFM Lotion and Body Wash, "nourish naturally with our botanical blends" and "obsessively natural kids." KMF's 12(b)(6) motion to dismiss is denied as to the terms on the Sunscreen and Sun Spray, "100% natural mineral advanced protection" and "100% natural mineral hydrating defense." Furthermore, KFM's 12(b)(6) motion to dismiss Plaintiffs' New York breach of express warranty claim is granted with leave to amend to allege the requisite notice.

KMF's motion to stay is denied, and its request for judicial notice is granted and denied in part. Plaintiffs' motion to appoint counsel and request for judicial notice are granted.

An amended complaint, if any, shall be filed on or before November 13, 2017. The parties shall appear for a further case management conference on January 18, 2017 at 1:30 p.m.

This Order disposes of Docket Nos. 27, 28, 31, 35, 36.

**IT IS SO ORDERED.**

Dated: October 23, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge