

Angela L. Diesch, Esq.
angela@dieschforrestlaw.com
6542 Lonetree Blvd.
Rocklin, CA 95765
916.740.6470

February 8, 2018

**VIA EMAIL (jsccrd@cand.uscourts.gov)**

The Honorable Jacqueline Scott Corley
Magistrate Judge Unites States District Court
Northern District of California
Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

RE:   ***Gasser v. Kiss My Face, LLC* (3:17-cv-01675)**
      **Letter Brief in Support of Defendant Kiss My Face's Motion for Judgment on the Pleadings**

Dear Judge Corley:

**I.      INTRODUCTION**[1]

Plaintiffs' Second Amended Complaint (the "SAC") largely disregards this Court's Order of October 23, 2017 (Dkt No. 54), denying in part and granting in part Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (the "FAC"). Plaintiffs' SAC offers minimal changes to the FAC that in no way correct the flaws identified in the Court's October 23, 2017 Order.  Consequently, Defendant Kiss My Face, LLC (hereafter, "Defendant") moves for Judgment on the Pleading pursuant to Federal Rule 12(c), dismissing without leave to amend Plaintiffs' claim for injunctive relief and claims as to the terms "nourish naturally with our botanical blends" and "obsessively natural kids" on Defendant's Lotion and Body Wash products.

The minimal amendments in the SAC to state a claim for injunctive relief do not address this Court's recognition that "Plaintiffs cannot establish a likelihood of future injury as they would not purchase the Products again if the unnatural ingredients remain." Dkt No. 54 at 5:27-6:1. Plaintiffs' amended allegations maintain that they are uninterested in purchasing the product unless its formulation is altered, but now offer speculation that Defendant might alter that formulation in the future and Plaintiffs would not know whether the labelling of that hypothetical

---

[1] Defendant has prepared its moving papers in this format pursuant to the Court's instruction to submit a letter brief.  For the Court's convenience, a Table of Contents and Table of Authorities are found below on pages 12 and 13.

product would be accurate. Even under the standards articulated by the Ninth Circuit in *Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103 (2017), those allegations are insufficient to provide Plaintiffs with standing to seek injunctive relief.

Similarly, Plaintiffs add no new factual allegations addressing the Court's finding that "[t]he statements 'nourish naturally with our botanical blends' and 'obsessively natural kids' . . . are not likely to deceive a reasonable consumer." Dkt No. 54 at 9:5-6. Plaintiffs' SAC amends only to add conclusory allegations that the Court's finding as to those phrases – which is now law of the case – is wrong, and that the terms "naturally" and "natural" are inherently confusing and misleading for consumers. Plaintiffs cannot seek reconsideration merely by repeating the same allegations accompanied by legal argument that this Court was wrong.

Plaintiffs have now had three opportunities to state their claims. There is no reason to allow them to keep trying, particularly given the clarity of the Court's ruling on the earlier motion to dismiss. Defendant's Motion for Judgment on Pleadings should be granted, and Plaintiffs denied further leave to amend.

## II.   RELEVANT BACKGROUND

### A.   Case Posture

Plaintiff Gasser filed a Class Action Complaint seeking redress for himself and on behalf of "a class defined as all purchasers in the United States who purchased the Products during the class period," as well as a subclass of "all persons in California who purchased the Products during the class period." Compl. ¶¶ 25, 26, Dkt. No. 1. Defendant timely filed a motion to dismiss Plaintiff's Complaint. Dkt. Nos. 14, 15, 16. In response to the motion to dismiss, Plaintiffs filed the FAC naming two additional plaintiffs, Noriko Ikeda and Melinda Kelly. The FAC added two additional challenged product categories, as well as additional claims for relief under New York state law. FAC, Dkt. No. 21.

In its ruling on Defendant's motion to dismiss the FAC, the court dismissed (1) Plaintiffs' claim for injunctive relief with leave to amend, and (2) Plaintiffs' claims for relief to the phrase "nourish naturally with our botanical blends" on Defendant's Body Lotion and Body Wash products, and the phrase "obsessively natural kids" on Defendant's Sunscreen products for children, and (3) Plaintiffs' New York breach of express warranty claim. Dkt. No. 54 at 19:2-10. The Court allowed leave to amend as to all the dismissed claims.

On November 13, 2017, Plaintiffs filed the SAC. Dkt No. 55. On November 29, 2017, Defendant filed an Answer to the SAC. Dkt No. 56. On January 19, 2018, the court issued an order allowing Defendant to "file a motion for judgment on the pleadings in the form of a letter brief regarding whether Plaintiffs have pled sufficient allegations to overcome the deficiencies identified in the Court's order on Defendant's motion to dismiss" the SAC. Dkt No. 61.

/////

### B. The SAC's New Allegations in Response to This Court's Order on The Motion To Dismiss

In an attempt to overcome the deficiencies identified in this Court's prior ruling on Defendant's motion to dismiss, in the SAC, Plaintiffs allege five[2] new paragraphs:

> 5. Phenoxyethanol is a preservative that is made from synthetic materials. Exposure to phenoxyethanol has been linked to adverse reactions such as eczema and dermatitis. Further, the Food and Drug Administration has warned that phenoxyethanol "can depress the central nervous system and may cause vomiting and diarrhea, which can lead to dehydration in infants."[] Ethylhexylglycerin is a synthetic conditioning agent and preservative. It also is an eye irritant and may cause dermatitis when used on people with sensitive skin. Butyloctyl salicylate is a synthetic conditioning agent.
>
> 12. Mr. Gasser wants to purchase Defendant's "natural" products in the future because he believes that natural products are safer and better for his skin. Mr. Gasser regularly visits stores where Defendant's products are sold. However, he is not familiar with all ingredients that cosmetic companies may use in their products, and so he cannot be certain that Defendant's "natural" representations are true when he sees the products on the store shelves. Moreover, the fact that Mr. Gasser now knows that phenoxyethanol and the other challenged ingredients are synthetic does not mean that he can simply look at Defendant's labeling to determine whether its natural labeling is accurate. Companies sometimes substitute one artificial ingredient for another, particularly when there is bad press about the ingredient. After the harmful effects of phenoxyethanol were publicized, for example, some companies replaced it with other synthetic ingredients.[3]
>
> 28. The labeling has the capacity to confuse or mislead reasonable consumers, including Plaintiffs, because they expect a product that is labeled or advertised as being "natural," or that it performs its intended function "naturally," to be free from synthetic ingredients. The front labeling further reinforces the impression that the products are all natural with depictions of leaves and flowers, statements emphasizing natural ingredients like woodland pine or ginseng, or statements suggesting that the product is suitable for

---

[2] One additional paragraph addressing the deficiencies related the breach of express warranty claim was also included in the SAC, but is not presented here, because Defendant is not currently contesting the allegations in the SAC addressing the notice issue as to the New York claim.

[3] This paragraph was duplicated for Plaintiffs Ikeda and Kelly at ¶¶ 14 and 16.

"sensitive skin" (despite containing phenoxyethanol, and/ or ethylhexylglycerin).[4]

29. The adverb "naturally" is just as capable of confusing or misleading reasonable consumers as the adjective "natural." For example, the Vermont legislature recognized this fact when it passed legislation in 2014 prohibiting a manufacturer from labeling genetically engineered food, i.e., GMOs, as "'natural,' 'naturally made,' 'naturally grown,' 'all natural,' or any words of similar import that would have a tendency to mislead a consumer." 2014 Vt. Acts & Resolves No. 120, Sec. 2, § 3043(c). The bottled water company Perrier was the subject of actions by the New York Attorney General, Federal Trade Commission and Food and Drug Administration for misrepresenting that its water was "naturally sparkling," when in fact the carbonation was the result of combining the water with processed gas.[] In 2015, the Federal Trade Commission filed a complaint against a dietary supplement manufacturer who falsely advertised that its products aided in weight loss by "naturally balance[ing] hormones."[] Several companies have been the subject of lawsuits where their products contained synthetic ingredients but were marketed as "naturally fresh," "naturally clean," or with statements that the products were made "naturally" or accomplished their purpose "naturally."

30. The natural labeling statements at issue here also are misleading in light of the fact that Defendant manufactures other products with the same and/or very similar "natural" labeling and advertising that do not contain unnatural and synthetic ingredients like those found in KMF Body Wash, KMF Body Lotion and KMF Sunscreen products. For instance, Defendant has marketed and sold a "4-in-1 Moisture Shave" product that bore the same, prominent "nourish naturally" representation on the front of the its labeling. However, that product did not contain any unnatural and synthetic ingredients such as the challenged products here.

Based on the above new allegations and allegations repeated from the FAC, the SAC again asserts eight counts: (1) Civil Code §§ 1750, et seq.("CLRA"), (2) Bus. & Prof. Code §§ 17200, et seq.("UCL"), (3) Bus. & Prof. Code §17500("FAL"), (4) New York GBL § 349, (5) New York GBL § 350, (6) Breach of the Express Warranty, (7) Unjust Enrichment, and (8) Fraud.

---

[4] Plaintiffs do not allege, nor could they, that phenoxyethanol or ethylhexylglycerin are not suitable for sensitive skin.

### III. ARGUMENT

#### A. The SAC Does Not Cure Plaintiffs' Lack of Standing to Seek Injunctive Relief for Failure to Allege Future Injury

As this Court previously ruled regarding the FAC:

> To establish standing, a plaintiff must show that "(1) he suffered an injury in fact; (2) the injury is 'fairly traceable' to the challenged conduct; and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In addition, to establish standing for prospective injunctive relief, a plaintiff must demonstrate that he not only "suffered or is threatened with a 'concrete and particularized' legal harm" but also that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. Plaintiff bears the burden of establishing Article III standing. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).

Dkt No. 54 at 6:2-11. Applying those standards, the Court held that the FAC did not include allegations of a risk of future harm because "Plaintiffs are now aware the Products contain phenoxyethanol and/or ethylhexylglycerin and as such cannot allege that they would be fraudulently induced to purchase the same Products again in the future." Dkt No. 54 at 6:12-14. Because Plaintiffs had not alleged they would purchase the same Products with the same synthetic ingredients even if properly labeled, they failed to establish standing for injunctive relief. *Id.* at 7:2-8.

Like the prior allegations of the FAC, the SAC's new allegations do not establish Plaintiffs suffered an injury that has a likelihood of being repeated, as the SAC's allegations show that Plaintiffs have no interest in purchasing in the future the products as currently formulated. Plaintiffs attempt to dodge the Court's ruling by alleging that they "want to purchase Defendant's 'natural' products in the future." (SAC ¶¶ 12, 14 and 16.) However, it is apparent from the context that the only "'natural' products" that Plaintiffs allege that they want to purchase are products different from the ones at issue in this case. The products Plaintiffs allege they want to purchase are products without the specific ingredients that Plaintiffs have determined are inconsistent with Defendant's labeling. Specifically, Plaintiffs allege they want to purchase natural products because such products "are safer and better for their skin," but they believe now that "phenoxyethanol and the other challenged ingredients are synthetic" and because other similar but unfamiliar synthetic ingredients might replace them, they will not know if such reformulated products in the future would be the products that they want to buy lacking any synthetic ingredients. (*Id.*) If Plaintiffs do not want to purchase products in the future with a

synthetic ingredient like phenoxyethanol, then they have no intent in purchasing the products at issue, as Plaintiffs have repeatedly alleged they contain phenoxyethanol.

In its Order on the motion to dismiss, the Court noted that the Ninth Circuit's recent ruling in *Davidson v. Kimberly-Clark, Corp.*, 873 F.3d 1103 (9th Cir. 2017) might offer a basis for Plaintiffs to allege standing for injunctive relief. Dkt No. 54 at 7:6-8. In *Davidson*, the plaintiff challenged the defendant manufacturer's claims that its pre-moistened wipes were "flushable." *Davidson,* 873 F.3d at 1107. After purchasing the wipes, the plaintiff discovered that they "were not truly flushable, so she stopped using" them. *Id.* at 1108. The plaintiff alleged that she "continues to desire" to find flushable wipes and would purchase the defendant's wipes if they were "truly flushable." *Id.* The plaintiff additionally alleged that she "regularly visits stores that sell" the defendant's wipes, "but is unable to determine, based on the packaging, whether the wipes are truly flushable." *Id*. The Ninth Circuit reversed the district court's ruling that the plaintiff had failed to allege the requisite risk of future harm, holding that the plaintiff could seek injunctive relief because "she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 1113. With respect to the allegations before it, the Ninth Circuit held that the plaintiff had standing to seek injunctive relief because she still desired to purchase truly flushable wipes and so long as the defendant's "flushable" claims were false, she had no way of determining which wipes she should purchase. *Id.* at 1116.

Although Plaintiffs have attempted to shoehorn their SAC into the *Davidson* template, they do not allege a comparable future injury or inability to determine at the point of purchase that the Products are not what should would want. The *Davidson* plaintiff would continue to walk into a store, see products labeled as "flushable," and have no way to know if the products inside the packages were still the products she had determined were not, in fact, "flushable," or if the product had been replaced with one that was "flushable." In contrast, Plaintiffs here allege knowing that phenoxyethanol and ethylhexylglycerin are synthetic substances. All Plaintiffs need to do to determine in the future whether a product they are considering purchasing continues to be the product they contend is falsely labeled is to look at the package to determine if those ingredients are present. Consequently, unlike the plaintiff in *Davidson*, they have no continuing risk of injury. *See Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. January 3, 2018) at *15 (holding *Davidson* inapplicable as the plaintiff now had knowledge to recognize allegedly misleading claim); *Broomfield v. Craft Brew Alliance, Inc.,* 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) at *14 (finding *Davidson* inapplicable where there was no allegation that the plaintiffs had no way of determining if claim on the package was true).

Plaintiffs clearly recognize this flaw in their allegations, as they further allege the speculative scenario of Defendant replacing phenoxyethanol or ethylhexylglycerin with other synthetic substances. SAC, ¶¶ 12, 14 and 16. However, those imagined replacement ingredients, and whether they are or are not "natural," are not the subject of this lawsuit. As Plaintiffs are

Hon Jacqueline Scott Corley
February 8, 2018
Page 7

now aware the substances they consider inconsistent with a "natural" product may be found in the products at issue, they have a way of determining at the point of purchase whether the offensive ingredients remain. They can review the listed ingredients on the packaging to determine if phenoxyethanol and/or ethylhexylglycerin are present, and if not, whether there is some other new and unfamiliar substance.

Plaintiffs do not allege an intent to purchase the Products – as currently formulated - again. As such, Plaintiffs lack standing to seek injunctive relief, because they fail to allege they are or will suffer ongoing injury as a result of the past purchase(s). Plaintiffs are aware of the allegedly synthetic ingredients in the Products. Although Plaintiffs allege other companies have purportedly swapped out ingredients, Plaintiffs do not allege Defendant has done so or that Plaintiff has reason to believe Defendant intends to do so. Further, as the ingredients' list is readily viewable at the point of sale on the product label, there is no risk Plaintiffs would not be able to avoid purchasing products containing the ingredients they purportedly find offensive. As such, Plaintiffs' alleged harm continues to be merely conjectural and hypothetical, and insufficient to confer standing.

### B. Plaintiffs' SAC Again Fails to Allege a Plausible Deception

The Court granted Defendant's motion to dismiss the FAC as to all claims premised on the statements "naturally nourishing with our botanical blends" and "obsessively natural kids," specifically finding:

> The statements "nourish naturally with our botanical blends" and "obsessively natural kids," on the other hand, are not likely to deceive a reasonable consumer. The Court is unaware of any case which has held that use of the adverb "naturally" is sufficient itself to deceive a reasonable consumer. "Nourish naturally with our botanical blends" is not an affirmative representation that the Body Wash and Body Lotion are entirely natural; instead, a reasonable consumer would interpret the statement as meaning the product contains natural ingredients—a true statement. Thus, Plaintiffs have not alleged facts sufficient to plausibly suggest that a reasonable consumer would interpret "naturally nourishing" to mean the product does not contain a single synthetic ingredient. Similarly, "obsessively natural kids," is displayed with "KIDS" in all capitals and in larger font, referring to kids being natural, not the product itself. This marketing is targeted towards parents who consider their kids "natural" and a reasonable consumer would not interpret the statement to mean that the product itself does not contain any synthetic ingredients. Again, while this statement might be false if the product did not contain any, or even mostly, natural ingredients, the allegations here are that the statements are false because the products contained a synthetic preservative.

Hon Jacqueline Scott Corley
February 8, 2018
Page 8

Order, Dkt. No. 54, at p. 9. Significantly, although the Court indicated it was granting the motion to dismiss with leave to amend "as to the terms on the KFM Lotion and Body Wash, 'nourish naturally with our botanical blends' and 'obsessively natural kids'" (Dkt No. 54 at 19:5-6), the Court's only suggestion as to how the allegations could be amended to state a claim was that "this statement might be false if the product did not contain any, or even mostly, natural ingredients." Of course, Plaintiffs do not and cannot make any such allegation that the Products at issue lack natural ingredients. Consequently, although leave to amend was granted, the Court left Plaintiffs with no means of salvaging their claims with truthful allegations.

Undeterred, Plaintiffs have used the granting of leave to amend as license to insert essentially a motion for reconsideration of the Court's ruling into the SAC's allegations. Plaintiffs continue to allege – despite the Court's clear ruling to the contrary – that the phrases "nourish naturally with our botanical blends" and "obsessively natural kids" have the capacity to confuse or mislead a reasonable consumer. (SAC, ¶¶ 7, 11, 13, 15, 27, 28, 29, 34). In support of their already rejected claims as to those phrases, Plaintiffs have added paragraphs to the SAC addressing the nature of phenoxyethanol and ethylhexylglycerin (¶ 5)[5]; items found on the packaging that Plaintiffs construe as reinforcing the misleading nature of the statements (¶ 28); actions by the Vermont legislature and the FTC regarding the use of the terms "naturally" (¶ 29); and Defendant's use of similar phrases on products that do not contain phenoxyethanol and ethylhexylglycerin (¶ 30).

Defendant disputes the issues raised in Plaintiffs' new paragraphs compel a different conclusion as to the phrases at issue than the Court reached in its ruling on the motion to dismiss. However, all of these new allegations are arguments that, if anywhere, belonged in Plaintiffs' opposition to the motion to dismiss the FAC. Having lost the issue there, Plaintiffs only means to seek relief from the Court's ruling that the phrases would not mislead a reasonable consumer was a motion for reconsideration pursuant to Federal Rules 59 or 60. *See Mayo v. Dean Witter, Inc.*, 258 F.Supp.2d 2097, 1103 (N.D. Cal. 2003) ("Once an order is entered, a court may set aside or change the order pursuant to a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or pursuant to a motion for reconsideration.") Plaintiffs cannot avoid their burden on seeking reconsideration by treating the Court's ruling as tentative and raising additional arguments in the form of new allegations.

---

[5] In support of Plaintiffs' new allegation regarding phenoxyethanol, Plaintiffs cite an archived 2008 notice from the FDA regarding potential dangers to infants from phenoxyethanol. Dkt No. 54 at 2:27 (fn. 3). Plaintiffs omit that the product addressed in that FDA notice was a nipple cream, and the potential exposure risk was from nursing infants regularly ingesting the product, which is not an issue for the skin products at issue in this case. Plaintiffs are not seeking relief for any physical injury resulting from actual or potential exposure to any substance in the products at issue.

Defendant maintains that all of Plaintiffs' new allegations seeking reconsideration of the Court's ruling as to the phrases "nourish naturally with our botanical blends" and "obsessively natural kids" are procedurally improper and should not be considered on this motion for judgment on the pleadings. Nevertheless, Defendant responds to some of the more outlandish allegations simply to clarify the record.

> (1) **The cited actions of the Vermont legislature and the FTC are simply irrelevant to whether the phrases "nourish naturally with our botanical blends" or "obsessively natural kids" are misleading.**

The actions of the Vermont legislature concerning the marketing of genetically engineered ("GE") ingredients do not have even a tangential relationship to whether Defendant's use of the phrases "nourish naturally with our botanical blends" or "obsessively natural kids" are misleading. With the enactment of 2014 Vt. Acts & Resolves No. 120 ("Act 120"), Vermont became the first State in the country to require labeling of foods that contain or may contain GE ingredients. Act 120 requires a "food offered for sale by a retailer [in Vermont] after July 1, 2016" to be labeled as "produced entirely or in part from genetic engineering if it is . . . entirely or partially produced with genetic engineering." 9 V.S.A. § 3043(a). Act 120 provides that the packaging of "processed foods" (defined as any food other than a raw agricultural commodity) that contains GE ingredients must bear one of three labels: (1) "produced with genetic engineering"; (2) "partially produced with genetic engineering"; or (3) "may be produced with genetic engineering." 9 V.S.A. § 3043(b)(3).

In enacting Act 120, the Vermont legislature determined that food containing GE ingredients is not "natural." Act 120 prohibits manufacturers of food containing GE ingredients from using labeling, advertising, or signage indicating that the food is "'natural,' 'naturally made,' 'naturally grown,' 'all natural,' or any words of similar import that would have a tendency to mislead a consumer." 9 V.S.A. § 3043(c). **Notably, Act 120 does not define the term "natural," nor does it bar the use of the term "natural" to describe any food product that does not contain GE ingredients.**

During its review of H.112, the Vermont legislature made several determinations regarding the special concerns raised by GE ingredients, which it memorialized in the Findings section of Act 120. See 2014 Vt. Acts & Resolves No. 120 (Act 120), Sec. 1. Those determinations related to such things as the absence of federal law for GE labeling (*id*. at Sec 1(1); the lack of any federal law requiring independent testing of the safety of foods produced with GE (*id*. at Sec. 1(2)); the lack of consensus regarding the safety of GE foods, and that such foods pose potential risks to human health (*id*. at Sec. 1(2)(D), (4), (6)); and that GE crops pose potential risks to the environment and may contribute to a loss of biodiversity and increased vulnerability of crops to pests and other factors (*id*. at Sec. 1(4)(C)). The Vermont legislature also found that polling "by the New York Times indicated that many consumers are under an

Hon Jacqueline Scott Corley
February 8, 2018
Page 10

incorrect assumption about whether the food they purchase is produced from [GE]." (*Id*. at Sec. 2(5)(B).)

The "nourish naturally with our botanical blends" and "obsessively natural kids" statements in this case do not trigger such concerns. For example, the "nourish naturally" description is specifically linked to the "botanical blends" found in the product. There is no allegation the botanical blends are developed from GE plant stocks. There is also no allegation the botanicals in the products are synthetic, artificial, or otherwise not natural. Clearly, if the Vermont legislature thought that term "naturally" could not be used in any context on the packaging of products containing any synthetic substance, it could have so legislated, as it did for the special dangers it determined were presented by GE ingredients.

Similarly, the SAC's reference to an FTC enforcement action (SAC ¶ 29, fn. 8) is wholly inapplicable to whether the two phrases in this case are misleading. The FTC news release cited in the SAC indicates that the FTC was pursuing a claim against the maker of a weight loss supplement because the supplement was not efficacious for its marketed purpose, not because the defendant misused the term "naturally" in describing the product.[6] The actual complaint filed by the FTC confirms that the misuse of the term "naturally" was not the basis of the claims on which the FTC sought relief.[7] However, even if the FTC had prosecuted the supplement manufacturer for marketing a product as "naturally balanc[ing] hormones" when it did not, the action would have no relevance to whether a claim can be alleged that it is misleading for Defendant to truthfully claim its products "nourish naturally with our botanical blends" when the products in fact includes natural ingredients for that very purpose.[8]

(2)  **Defendant's use of "Nourish Naturally" on other products does not render its use on these products misleading.**

Among Plaintiffs' more confusing arguments is that somehow Defendant's use of the phrase "Nourish Naturally" on other products renders Defendant's use of the phrase "nourish naturally with our botanical blends" on the products at issue in this case misleading. Plaintiffs contend that because the other product on which "nourish naturally" is found does not include any synthetic ingredient, the use of the phrase on any product that includes any synthetic

---

[6] See https://www.ftc.gov/news-events/press-releases/2015/05/ftc-charges-marketers-misleading-claims-their-supplement-causes.

[7] See https://www.ftc.gov/system/files/documents/cases/150506lunadacmpt_0.pdf.

[8] The reference to the action brought against Perrier for misrepresenting its product as "naturally sparkling" is similarly inapposite because, as the SAC acknowledges, the claim was false because "the carbonation was the result of combining the water with processed gas." SAC, ¶ 29. In contrast, Defendant accurately represents that its products "nourish naturally with our botanical blends" because it is undisputed that the products do include nourishing botanical ingredients.

ingredient is false. Plaintiffs' contention ignores that in both instances the statements are accurate – the products all include natural ingredients for skin care. The fact that the products at issue in this case also include synthetic preservative ingredients necessary for the product does not make the claim misleading, as there is no representation that the product consists entirely of the natural ingredients.

                (3)      **"Obsessively natural KIDS" is not misleading.**

Although the SAC maintains Plaintiffs' claim that Defendant's use of the phrase "obsessively natural" is misleading (SAC, ¶ 34), it fails in any way to address the Court's ruling on the use of the phrase. Specifically, the Court noted, "'obsessively natural kids' is displayed with 'KIDS' in all capitals and in larger font, referring to kids being natural, not the product itself. This marketing is targeted toward parents who consider their kids 'natural' and a reasonable consumer would not interpret the statement to mean that the product itself does not contain any synthetic ingredients." Dkt. No. 54 at 9:13-16. Nothing included in the SAC provides reason for the Court to reassess this sensible conclusion. Consequently, at a minimum, the Court must grant Judgment on the Pleadings as to any claims for labeling of the products at issue with "obsessively natural KIDS."

## IV.    CONCLUSION

For the reasons stated above, Defendant Kiss My Face, LLC respectfully requests this Court grant its Motion for Judgment on the Pleadings as to Plaintiffs' claims for injunctive relief and all claims based on the "naturally nourishing with our botanical blends" and "obsessively natural KIDS" statements. As the all claims pertaining to the Body Wash and Body Lotion products are premised on the "naturally nourishing" claim, all claims for relief based these two categories products should be dismissed with prejudice. In addition, because Plaintiff Gasser's claims are solely premised on the "naturally nourishing" statement on the Body Lotion products (SAC ¶ 11), Plaintiff Gasser's individual and class claims should be dismissed in their entirety with prejudice.

Thank you for your consideration.

Respectfully submitted,

*[signature]*
ANGELA L. DIESCH

cc: Joel Smith, Esq. (via email jsmith@bursor.com)

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. RELEVANT BACKGROUND
    A. Case Posture..........................................................................................................2
    B. The SAC's New Allegations in Response to This Court's Order on
       The Motion to Dismiss .........................................................................................3

III. ARGUMENT...............................................................................................................5
    A. The SAC Does Not Cure Plaintiffs' Lack of Standing to Seek Injunctive
       Relief For Failure to Allege Future Injury............................................................5
    B. Plaintiffs' SAC Again Fails to Allege a Plausible Deception..............................7
       (1) The cited actions of the Vermont Legislature and the FTC are
           simply irrelevant to whether the phrases "nourish naturally with
           our botanical blends" or "obsessively natural kids" are misleading.............9
       (2) Defendant's use of "Nourish Naturally" on other products does
           not render its use on these products misleading.........................................10
       (3) "Obsessively natural KIDS" is not misleading............................................11

IV. CONCLUSION.........................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) .................... 5

*Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ....................................... 5

*Broomfield v. Craft Brew Alliance, Inc.,* 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) at *14 ... 6

*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ................................................................. 5

*Davidson v. Kimberly-Clark, Corp.,* 873 F.3d 1103 (9th Cir. 2017) ........................................... 2, 6

*Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. January 3, 2018) at *15 ...... 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ....................................................... 5

*Mayo v. Dean Witter, Inc.*, 258 F.Supp.2d 2097, 1103 (N.D. Cal. 2003) ..................................... 8

**Statutes**
Bus. & Prof. Code § § 17200, et. seq. ........................................................................................... 4
Bus. & Prof. Code  § 17500 .......................................................................................................... 4
Civil Code  § 1750 ........................................................................................................................ 4

**Rules**
Federal Rule 12(c) ......................................................................................................................... 1

**Other Authorities**
2014 Vt. Acts & Resolves No. 120 ................................................................................................ 9
2014 Vt. Acts & Resolves No. 120, Sec. 2, § 3043(c) .................................................................. 4
9 V.S.A. §3043(a) .......................................................................................................................... 9
9 V.S.A. §3043(c) .......................................................................................................................... 9
GBL § 349 ..................................................................................................................................... 4
GBL §350 ...................................................................................................................................... 4