1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREW GASSER, ET AL.,                    Case No. 17-cv-01675-JSC

            Plaintiffs,
8

9        v.                                    **ORDER RE: JUDGMENT ON THE
                                               PLEADINGS**
10   KISS MY FACE, LLC,

            Defendant.
11

12

13       Plaintiffs allege the labeling of Defendant Kiss My Face LLC's ("KMF") cosmetic

14   products as "naturally nourishing with our botanical blends," "obsessively natural kids," "100%

15   natural mineral advanced protection," and "100% natural mineral hydrating defense" is false and

16   misleading because the products contain synthetic ingredients – phenoxyethanol,

17   ethylhexylglycerin, and/or butyloctyl salicylate.  Now pending before the Court is Defendant's

18   motion for judgment on the pleadings.  After considering the parties' written submissions, the

19   Court GRANTS in part and DENIES in part Defendant's motion.  Plaintiffs do not plausibly

20   allege that "nourish naturally with our botanical" blend on the lotion and body wash products

21   would deceive a reasonable consumer.  They do, however, allege facts sufficient to give them

22   standing to pursue injunctive relief at this stage of the proceedings.

23                    **SECOND AMENDED COMPLAINT ALLEGATIONS**

24       Defendant sells skin care products, including Kiss My Face® 2-in-1 Deep Moisturizing

25   Body Lotion ("Body Lotion"); Kiss My Face® Bath and Body Wash ("Body Wash"); and Kiss

26   My Face® Sun Spray Lotion and Kids Defense Lotion ("Sunscreen") (collectively, "the

27   Products").  (Dkt. No. 55 ¶ 1.)  The front packaging of every Product displays pictures of leaves

28   and flowers and highlights the Product's "botanical blends," while the back labeling states that the

United States District Court
Northern District of California

1  Products are "naturally effective."  (*Id*. ¶ 2.)  The front packaging of the Body Lotion and Body

2  Wash states "nourish naturally."  (*Id*. ¶ 2.)  The front packaging of every Sunscreen states

3  "obsessively natural" and it provides "100% natural mineral advanced protection," or a "100%

4  natural mineral hydrating defense."  (*Id*. ¶ 3.)

5      Every Product contains three synthetic materials: phenoxyethanol, ethylhexylglycerin,

6  and/or butyloctyl salicylate.  (*Id*. ¶¶ 4, 5.)  Phenoxyethanol is a preservative.  (*Id*. ¶ 5.)

7  Ethylhexylglycerin is a synethic conditioning agent and preservative.  (*Id*.)  Butyloctyl salicylate

8  is a synthetic conditioning agent.  (*Id*.)

9      The front labeling reinforces the impression that the products are all natural with

10  depictions of leaves and flowers, statements emphasizing natural ingredients like woodland pine

11  or ginseng, or statements suggesting that the product is suitable for "sensitive skin" despite

12  containing synthetic ingredients.  (*Id*. ¶ 28.)  Plaintiffs believed the representations "nourish

13  naturally" and "naturally effective" meant that the Products did not contain synthetic chemicals.

14  (*Id*. ¶¶ 11, 13, 15.)

15      Plaintiffs and class members paid a premium for Defendant's Products over comparable

16  products that did not purport to be natural products.  (*Id*. ¶¶ 6, 11, 13, 15.)  Plaintiffs would not

17  have bought the product had they known the labeling they relied upon was false, misleading, and

18  deceptive.  (*Id*. ¶¶ 11, 13, 15.)  Plaintiffs want to buy Defendant's natural products in the future

19  because they believe natural products are safer and better for their skin.  (*Id*. ¶¶ 12, 14, 16.)

20  Plaintiffs regularly visit stores where Defendant's products are sold; however, they cannot be

21  certain that Defendant's natural representations are true when they see the products on store

22  shelves.  (*Id*.)

23      Plaintiffs bring eight claims: (1) California's Consumer Legal Remedies Act, Cal. Civ.

24  Code § 1750 et seq. ("CLRA"), (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code

25  § 17200 et seq. ("UCL"), (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500

26  et seq. ("FAL"), (4) New York's Deceptive Acts or Practices, N.Y. Gen. Bus. Law § 350

27  ("GBL"), (5) New York's False Advertising Law, N.Y. GBL § 350, (6) breach of express

28  warranty, (7) unjust enrichment, and (8) fraud.  (*Id*. ¶¶ 47-100.)

United States District Court
Northern District of California

United States District Court
Northern District of California

**PROCEDURAL HISTORY**

Plaintiff Gasser filed his original complaint seeking redress for himself and on behalf of individuals who purchased Defendant's products.  (Dkt. No. 1 at 2-3.)  Defendant moved to dismiss.  (Dkt. No. 14.)  Plaintiffs responded by filing their First Amended Complaint ("FAC").  (Dkt. No. 21.)  The FAC added (1) two named plaintiffs, Noriko Ikeda and Melinda Kelly, (2) Kiss My Face Sun Spray Lotion and Kids Defense Lotion, and (3) claims for relief under New York state law.  (*Id*. at 2:1-13, 17, 18.)

Defendant then moved to dismiss Plaintiffs' FAC.  (Dkt. No. 27.)  The Court granted in part and denied in part Defendant's motion.  (Dkt. No. 54.)  Specifically, the Court denied (1) Defendant's 12(b)(1) arguments regarding the political question doctrine and lack of substantiation and (2) Defendant's 12(b)(6) arguments as to the "100% natural mineral advanced protection" and "100% natural mineral hydrating defense" statements.  The Court granted Defendant's motion to dismiss as to (1) Plaintiffs' claim for injunctive relief, (2) Plaintiffs' claims for relief as to the phrase "nourish naturally with our botanical blends" on Defendant's Body Lotion and Body Wash products, and the phrase "obsessively natural kids" on Defendant's Sunscreen products for children, and (3) Plaintiffs' New York breach of express warranty claim.  (Dkt. No. 54 at 19:2-10.)  The Court granted Plaintiffs leave to amend for the dismissed claims.  (*Id*.)

Thereafter Plaintiffs filed their Second Amended Complaint ("SAC").  (Dkt. No. 55.)  Defendant answered the SAC.  (Dkt. No. 56.)  The Court then held a case management conference and set a briefing schedule for Defendant's motion for judgment on the pleadings in the form of a letter brief regarding "whether Plaintiffs have pled sufficient allegations to overcome the deficiencies identified in the Court's order on Defendant's motion to dismiss."  (Dkt. Nos. 60 & 61.)  The Court also advised it would take the filing under submission and would not schedule a hearing unless necessary.  (Dkt. No. 61 at 2:1-2.)  The parties' letter briefing is now complete.  (Dkt. Nos. 66, 67, 68, 69.)

//

//

1

**DISCUSSION**

2      Defendant moves for judgment on the pleadings pursuant to Federal Rule 12(c), dismissing

3   without leave to amend (1) Plaintiffs' claim for injunctive relief and (2) claims based upon the

4   terms "nourish naturally with our botanical blends" and "obsessively natural kids."

5   **A.    Injunctive Relief**

6      Defendant makes a facial attack on Plaintiffs' standing to pursue injunctive relief. *See Safe*

7   *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (explaining that in a facial attack

8   on standing, "the challenger asserts that the allegations contained in a complaint are insufficient on

9   their face to invoke federal jurisdiction"). In particular, it argues the SAC's new allegations do not

10   establish Plaintiffs suffered an injury that has a likelihood of being repeated because Plaintiffs

11   have no interest in purchasing in the future the products as currently formulated.

12      A plaintiff may face a threat of imminent or actual harm sufficient to confer standing to

13   seek injunctive relief by not being able to rely on a product's labels in the future. *Davidson v.*

14   *Kimberly-Clark Corporation*, 873 F.3d 1103, 1113 (9th Cir. 2017). "[A] previously deceived

15   consumer may have standing to seek an injunction against false advertising or labeling, even

16   though the consumer now knows or suspects that the advertising was false at the time of the

17   original purchase, because the consumer may suffer an actual and imminent, not conjectural or

18   hypothetical threat of future harm." *Id.* at 1115 (9th Cir. 2017). "Knowledge that the

19   advertisement or label was false in the past does not equate to knowledge that it will remain false

20   in the future." *Id.* The threat of future harm might be that a consumer "will be unable to rely on

21   the product's advertising or labeling in the future, and so will not purchase the product although

22   she would like to," or the possibility that a consumer "might purchase the product in the future,

23   despite the fact it was once marred by false advertising or labeling, as she may reasonably, but

24   incorrectly, assume the product was improved." *Id.*

25      Plaintiffs' allegations sufficiently allege standing. They want to buy natural products, and

26   they shop where Defendant's products are sold; however, as the plaintiff in *Davidson*, given their

27   past experience with Defendant, they cannot rely upon Defendant's labeling. (SAC ¶¶ 12, 14, 16.)

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1          Defendant's insistence that Plaintiffs do not have standing because they allege they

2    understand phenoxyethanol, ethylhexylglycerin, and butyloctyl salicylate are synthetic substances,

3    and thus all they need to do is to look at the package to determine if those ingredients are present,

4    ignores Plaintiffs' other allegations.  Plaintiffs contend that companies such as Defendant

5    sometimes substitute one artificial ingredient for another, particularly in response to bad press; just

6    because a product is not labelled with phenoxyethanol, ethylhexylglycerin, or butyloctyl salicylate

7    does not mean that it does not contain any artificial ingredients.  (SAC ¶¶ 12, 14, 16.)  Thus, at this

8    stage in the proceedings, the Court cannot conclude as a matter of law that Plaintiffs do not have

9    standing to pursue any injunctive relief.  Further, consumers should not be expected to "look

10   beyond misleading representations on the front of the box to discover the truth from the ingredient

11   list in small print on the side of the box."  *Williams v. Gerber Products Co.*, 522 F.3d 934, 939

12   (9th Cir. 2008).  As the Ninth Circuit has explained: "[w]e do not think that the FDA requires an

13   ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to

14   correct those misinterpretations and provide a shield for liability for the deception.  Instead,

15   reasonable consumers expect that the ingredient list contains more detailed information about the

16   product that confirms other representations on the packaging."  *Id*. at 939-940.

17          Defendant's reliance on *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D.

18   Cal. Jan. 3, 2018) and *Broomfie.ld v. Craft Brew Alliance, Inc.*, 2017 WL 5665654 (N.D. Cal.

19   Nov. 27, 2017) is misplaced.  In *Fernandez*, the plaintiff "admit[ted] that she now has knowledge

20   that enables her to make an appropriate choice with respect to Atkins's products," and she did not

21   allege that she wished to continue purchasing the products at issue.  *Fernandez*, 2018 WL 280028,

22   at *14-15.  The *Broomfield* court concluded the plaintiffs' allegations were not equivalent to those

23   in *Davidson* because the plaintiffs did not allege that they have a current desire to purchase the

24   products.  2017 WL 5665654 at *4.  Here, in contrast, Plaintiffs allege that they want to purchase

25   Defendant's products, but they "cannot be certain that Defendant's 'natural' representations are

26   true when [they] see[] the products on store shelves."  (SAC ¶¶ 12, 14, 16.)

27          Finally, Defendant emphasizes that in *Bruton v. Gerber Products Company*, 2018 WL

28   1009257 (N.D. Cal. Feb. 13, 2018), the court concluded that even under *Davidson*, a plaintiff

United States District Court
Northern District of California

1   lacks standing to seek injunctive relief where the disputed claims are no longer found on the

2   products at issue.  2018 WL 1009257 at *6.  Defendant relies on exhibits to Plaintiffs' opposition

3   that show that the phrase "obsessively natural KIDS," is now only "obsessively KIDS" and

4   "naturally" has been removed entirely.  *Bruton*, however, was a decision to deny class certification

5   of an injunctive relief claim; thus, it involved the court considering evidence and making findings.

6   This Court cannot make similar findings based solely on the exhibits to Plaintiffs' opposition.  The

7   issue is more appropriately resolved on summary judgment or, as in *Bruton*, at the class

8   certification stage.

9          The motion for judgment on the pleadings on the injunctive relief claim is therefore

10   denied.

11   **B.**      **Reasonable Consumer**

12          **1.**      **Lotion and Body Wash Products**

13          Defendant next contends that the terms "nourish naturally with our botanical blends" on

14   Defendant's Lotion and Body Wash products are not plausibly deceptive to a reasonable

15   consumer.  The SAC alleges the products are labeled as follows:




United States District Court
Northern District of California

1    The Court previously dismissed Plaintiffs' Lotion and Body Wash claims on the ground that the

2    "nourish naturally" statements "are not likely to deceive a reasonable consumer."  (Dkt. No. 54 at

3    9.)  In its SAC, Plaintiffs' new allegations regarding these terms are (1) a paragraph addressing the

4    nature of phenoxyethanol, ethylhexylglycerin, and butyloctyl salicylate (¶ 5); (2) an argument that

5    the labeling has the "capacity to confuse or mislead reasonable customers" (¶ 28); (3) actions by

6    the Vermont legislature and the FTC regarding the use of the terms "naturally" (¶ 29); and (4)

7    Defendant's use of similar phrases on products that do *not* contain "unnatural or synthetic"

8    ingredients (¶ 30).

9           The Court again concludes that Plaintiffs have not plausibly alleged that "nourish naturally

10   with our botanical blends" is likely to deceive a reasonable consumer into believing the product

11   contains only natural ingredients.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)

12   ("the reasonable consumer standard requires a probability that a significant portion of the general

13   consuming public or of targeted consumers, acting reasonably in the circumstances, could be

14   misled.").

15          First, the Court did not hold and does not hold that the adverb "naturally" cannot deceive a

16   reasonable consumer.  Of course it can, depending on the context.  For example, in *Shank v.*

17   *Presidio Brands, Inc.*, 2018 WL 510169, at *9 (N.D. Cal. Jan. 23, 2018), the product said it was

18   "Naturally Derived" along with the statement that the product uses "only naturally derived

19   ingredients."  *Id.* at 1-2.  The court concluded that in light of the allegation that the products

20   contained artificial ingredients, the complaint plausibly alleged that the statement that the products

21   "contain only naturally derived ingredients" is false: "The 'only naturally derived ingredients'

22   statement is another way of saying '100% naturally derived ingredients.'"  *Id.* at 9.  In *Gregorio v.*

23   *The Clorox Co.*, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018), the court did deny a motion to dismiss

24   a claim based on the term "naturally derived," but in the context of a label that states "green

25   works" in large letters and directly below "naturally derived."  *Id.* at 1, 4.  The "naturally derived"

26   representation appeared above the particular cleaning product; for example, "'green works

27   naturally derived compostable cleaning wipes.'"  *Id.* at 1.

28

1    "Nourish naturally," however, is not the same as "contains only naturally derived

2   ingredients." Indeed, tellingly, the *Shank* plaintiff did not challenge as false the statement that the

3   product was "naturally derived." *Shank,* at 2. And Plaintiffs do not allege that Defendant markets

4   its products as "naturally derived lotion" or something similar, as in *Gregorio.* Instead, as the

5   Court previously held, a reasonable consumer would interpret "nourish naturally" to mean that the

6   product contains natural ingredients, rather than *only* natural ingredients. The term "naturally

7   effective" on the back label does not alter this analysis. That term implies that the *active*

8   ingredients—those that are effective—are natural. Plaintiffs do not allege that such a

9   representation is false. Defendant's use of "nourish naturally" on products that do not contain any

10  synthetic ingredients does not change how a reasonable consumer would interpret the marketing at

11  issue here.

12    Second, that the Vermont legislature prohibited a manufacturer from labeling genetically

13  modified food as "naturally made" or "naturally grown" does not persuade the Court otherwise.

14  Similarly, it is unsurprising that the Federal Trade Commission concluded that the representation

15  that water was "naturally sparkling" was false where the carbonation was the result of combining

16  water with processed gas. Such term is reasonably construed as a representation that the

17  "sparkling" nature of the water came from natural means, a representation that was false. Here,

18  however, "nourish naturally" cannot be construed as a representation that the product contains

19  *only* natural ingredients, the crux of Plaintiffs' falsity allegation. The Court reaches this conclusion

20  after considering the terms in the context of the packaging as a whole, including the "depictions of

21  leaves and flowers, statements emphasizing natural ingredients like woodland pine or ginseng, or

22  statements suggesting that the product is suitable for "sensitive skin." In this context, "nourish

23  naturally" could perhaps reasonably be interpreted as that most of the ingredients are natural;

24  indeed, the statements might be false if there was only one natural ingredient in the product. But

25  that is not Plaintiffs' allegation. Or perhaps it could be construed as a representation that the

26  active, effective ingredients—those that nourish—are natural. Again, Plaintiffs do not allege that

27  such a representation is false.

28

8

<div style="text-align:left; transform: rotate(-90deg)">
United States District Court<br>
Northern District of California
</div>

1   Accordingly, the claims as to the Lotion and Body Wash products are dismissed.  The

2   dismissal, however, is with leave to amend given that in the SAC Plaintiffs allege for the first time

3   that ethylhexylglycerin and butyloctyl salicylate are conditioning agents.  (SAC ¶ 5.) While

4   Plaintiffs do not explain what that means, the Court cannot conclude as a matter of law that these

5   are not active ingredients that provide the "nourishment" or make the product "effective."  *See*

6   *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013) ("Where a

7   court grants...a motion for judgment on the pleadings under Rule 12(c), leave to amend should be

8   freely given if it is possible that further factual allegations will cure any defect.").

9   **2.    The Sunscreen Products**

10   The Court previously concluded that Plaintiffs plausibly alleged that the phrases "100%

11   natural mineral advanced protection" anok cood "100% natural mineral hydrating defense" on the

12   Sunscreen products could deceive a reasonable consumer into believing that the products were

13   100% natural.  Defendant moves for judgment on the pleadings that the phrase "obsessively

14   natural kids" on the label would not similarly deceive a consumer.  But the SAC only challenges

15   Sunscreen products with the 100% natural claim. (Dkt. No. 55 at ¶ 33.)  The Court therefore

16   declines to parse out the "obsessively natural kids" phrase on the same label.  While it alone might

17   be insufficiently deceptive, it can be considered in the context of the label as a whole.

18   **CONCLUSION**

19   Defendant's motion for judgment on the pleadings as to the Lotion and Body Wash

20   products that state "nourish naturally with our botanical blends" is granted.  Plaintiffs cannot

21   plausibly allege that in the context of the entire label the "nourish naturally" statement would

22   mislead a significant portion of reasonable consumers into believing the products are 100%

23   natural.  However, the motion is granted with leave to amend for the reasons explained above.

24   Defendant's motion for judgment on the pleadings on the injunctive relief claim regarding

25   the remaining sunscreen products is denied as Plaintiffs have sufficiently alleged facts to support

26   standing.  The Court also declines to grant judgment on the pleadings in part with respect to the

27   actionable Sunscreen products.

28

1    Plaintiffs are also granted leave to amend to allege that Mr. Gasser purchased a challenged

2 sunscreen product.

3    Any amended complaint must be filed within 20 days of the date of this Order.

4

5    **IT IS SO ORDERED.**

6 Dated: April 4, 2018

7

8    _____

9    JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California