**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com
        ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone; (619)272-7014
Facsimile: (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW GASSER, NORIKO IKEDA, and MELINDA KELLY, on behalf of themselves and all others similarly situated, | Case No. 3:17-cv-01675-JSC |
| Plaintiffs, | **FOURTH AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| ALIPH BRANDS, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Andrew Gasser, Noriko Ikeda, and Melinda Kelly (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Aliph Brands, LLC ("Aliph" or "Defendant"). Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1.      This is a class action against Aliph for its manufacture, distribution, marketing, and sale of Kiss My Face® 2-in-1 Deep Moisturizing Body Lotion ("KMF Body Lotion"), and Kiss My Face® Sun Spray Lotion and Kids Defense Lotion "KMF Sunscreen" and collectively, "the Products").

2.      On November 1, 2018, to evade liability for the pending class action lawsuit, Kiss My Face, LLC ("KMF"), *unbeknownst to its own attorneys*, purported to dissolve. *See* Dkt. No. 104, ¶ 5 ("On November 8, 2018, the Diesch Firm was provided for the first time with a copy of a 'Notice of Dissolution of Kiss My Face, LLC,' purporting to inform creditors and shareholders that KMF had been dissolved on November 1, 2018 …").

3.      A few days later, Aliph "announced that they have acquired the assets of Kiss My Face, one of the largest and most established independent, pure-play brands in the natural personal care category."[1]

4.      However, in order to avoid liability to existing creditors, Aliph and KMF structured the acquisition in such a way as to leave KMF penniless, unable to satisfy any existing obligations. *See* Dkt. No. 104, ¶ 5 (describing the result of the acquisition as "a sale of the company's assets that resulted in proceeds insufficient to make payments to creditors").

5.       Indeed, the circumstances surrounding this purported "asset sale" were intended to defraud creditors. Upon information and belief, the sale was structured such that consideration for the sale was not received and held by the transferor corporation, KMF. Instead, consideration for the

---

[1] https://www.prweb.com/releases/aliph_brands_completes_acquisition_of_kiss_my_face/prweb1 5877727.htm (last visited Dec. 5, 2018).

sale was paid by Aliph directly to the stockholders of KMF, not to KMF itself, in order to leave KMF without sufficient funds to meet the claims of creditors.

6.    Despite the shift in assets, Aliph is merely continuing the same business operations as KMF.   Aliph continues to use the same "Kiss My Face" brand name, logo, packaging, contact information, etc. as KMF.  Aliph is selling the same products.  Aliph also continues to run and operate the same product website as KMF, www.kissmyface.com.  A recent press release confirms that "Aliph Brands will operate and continue to grow the [Kiss My Face] brand and product offerings with its best-in-class licensing partnerships."[2]  And Aliph's website prominently displays the Kiss My Face Products:



7.    Aliph is therefore liable in this action as the successor to KMF.  It is a mere continuation of KMF, and holds itself out to the world as such.  A consumer visiting KMF's website, for example, would probably not know that the original company that started KMF was dissolved and that Aliph now operates the company behind the scenes.

---

[2] *Id.*

8.      Consistent with Defendant's self-promotion as a leader in natural cosmetics, the front packaging of every KMF Body Lotion product states in prominent, bold lettering "nourish naturally." To reinforce the message that the Products are natural products, the front packaging of every Product displays pictures of leaves and flowers and highlights the Product's "botanical blends," while the back labeling states that the Products are "naturally effective."

9.      The front packaging of every KMF Sunscreen states that the Products are "obsessively natural" and provide "100% natural mineral advanced protection," or that they provide a "100% natural mineral hydrating defense."

10.     Contrary to the labeling, however, every purportedly natural Product contains phenoxyethanol, ethylhexylglycerin, glyceryl stearate SE, synthetic fragrance, polysorbate 60, retinyl palmitate, sodium benzoate, sodium phytate, tocopheryl acetate, panthenol, potassium sorbate and/or acrylates copolymer.  In April 2016, the Federal Trade Commission ("FTC") filed complaints against three cosmetics manufacturers for representing that their products were "natural" when they contained phenoxyethanol and/or ethylhexylglycerin.  All three companies agreed to cease marketing the products in question as being "natural."[3]

11.     Phenoxyethanol is a preservative that is made from synthetic materials.  Exposure to phenoxyethanol has been linked to adverse reactions such as eczema and dermatitis.[4]  Further, the Food and Drug Administration has warned that phenoxyethanol "can depress the central nervous system and may cause vomiting and diarrhea, which can lead to dehydration in infants."[5]

---

[3] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited April 24, 2018).

[4] Bohn, S., & Bircher, A. J. (2001). Phenoxyethanol-induced urticaria. Allergy, 56(9), 922-923; Chasset, F., Soria, A., Moguelet, P., Mathian, A., Auger, Y., Francès, C., & Barete, S. (2015). Contact dermatitis due to ultrasound gel: A case report and published work review.  The Journal of Dermatology.

[5] https://wayback.archive-it.org/7993/20161023081446/http://www.fda.gov/ Safety/MedWatch/SafetyInformation/SafetyAlertsforHumanMedicalProducts/ucm092727.htm (last visited April 24, 2018).

12.     Ethylhexylglycerin is a synthetic conditioning agent and preservative.  Conditioning agents are also known as moisturizers because they are comprised of various oils and lubricants.[6] Thus, contrary to Defendant's "nourish naturally" representation, this is a synthetic ingredient that purportedly provides nourishment.

13.     Acrylates copolymer is one of the first ingredients listed in Defendant's purportedly natural children's sunscreen.  Acrylates copolymer is a synthetic ingredient used to make sunscreen waterproof.  Whole Foods Markets, a seller of Defendant's products, placed this ingredient on a list of banned ingredients for body care products sold in its stores, explaining that in addition to being synthetic, the ingredient may also contain harmful impurities.  Defendant nonetheless continued to include the ingredient in its purportedly "natural" children's sunscreen products.

14.     The body lotion products contain varying combinations of glyceryl stearate SE, synthetic fragrance, polysorbate 60, retinyl palmitate, sodium benzoate, sodium phytate, tocopheryl acetate, panthenol, and/or potassium sorbate.  They are synthetic ingredients and contribute to making the product effective.  Panthenol, retinyl palmitate, and tocopheryl acetate, for example, are commonly used by cosmetic manufacturers as moisturizers.

15.     Plaintiffs and members of the classes described below paid a premium for Defendant's Products over comparable products that did not purport to be natural products.  Contrary to representations on the Products' labeling, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

16.     Defendant's representation that the Products are "natural" is unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, and continues to this day.  As such, Defendant's practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), as well as New York's Deceptive Acts and Practices and False Advertising Laws, N.Y.

---

[6] https://en.wikipedia.org/wiki/Conditioner_(chemistry) (last visited April 24, 2018).

Gen. Bus. Law §§ 349, 350 ("GBL").  Plaintiffs also bring claims for fraud, unjust enrichment and breach of express warranty.  Plaintiffs also bring claims for constructive and actual fraudulent transfer.

## JURISDICTION AND VENUE

17.    This Court has personal jurisdiction over Defendant.  Defendant purposefully avails itself of the California consumer market and distributes the Products to hundreds of locations within this County and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every day.  Defendant Aliph is located in California.

18.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

19.    Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

20.    Plaintiff Andrew Gasser is a citizen of California, residing in San Francisco.  In the last approximately two years, Mr. Gasser made several purchases of KMF Body Lotion and KMF Sunscreen from various stores in and near San Francisco, California and Squaw Valley, California. Prior to purchasing KMF Body Lotion, Mr. Gasser saw and read the front of the product packaging, and relied on the representation and warranty that the product would "nourish naturally."  Prior to purchasing, Mr. Gasser also saw, read and relied on the representation and

warranty that the product was "naturally effective." Prior to purchasing KMF Sunscreen, Mr. Gasser read and saw the front of the product packaging, and relied on the representation and warranty that the product provided "100% natural mineral advanced protection," or provided a "100% natural mineral hydrating defense." Mr. Gasser understood these representations to mean that KMF Body Lotion and KMF Sunscreen did not contain synthetic chemicals. Mr. Gasser purchased KMF Body Lotion and KMF Sunscreens at a substantial price premium, and would not have bought the products had he known that the labeling he relied on was false, misleading, deceptive and unfair.

21. Mr. Gasser wants to purchase Defendant's "natural" products in the future because he believes that natural products are safer and better for his skin. Mr. Gasser regularly visits stores where Defendant's products are sold. However, he is not familiar with all ingredients that cosmetic companies may use in their products, and so he cannot be certain that Defendant's "natural" representations are true when he sees the products on the store shelves. Moreover, the fact that Mr. Gasser now knows that phenoxyethanol and the other challenged ingredients are synthetic does not mean that he can simply look at Defendants' labeling to determine whether its natural labeling is accurate. Companies sometimes substitute one artificial ingredient for another, particularly when there is bad press about the ingredient. After the harmful effects of phenoxyethanol were publicized, for example, some companies replaced it with other synthetic ingredients.

22. Plaintiff Noriko Ikeda is a citizen of California, residing in Orange County, California. Since 2016, Ms. Ikeda has made several purchases of KMF Sunscreen in and near Orange County, California. Prior to purchasing KMF Sunscreen, Ms. Ikeda read and saw the front of the product packaging, and relied on the representation and warranty that the product was "obsessively natural" and provided "100% natural mineral advanced protection," or provided a "100% natural mineral hydrating defense." Ms. Ikeda understood these representations to mean that KMF Sunscreen did not contain synthetic chemicals. Ms. Ikeda purchased KMF Sunscreen at

a substantial price premium, and would not have bought the products had she known that the labeling she relied on was false, misleading, deceptive and unfair.

23.     Ms. Ikeda wants to purchase Defendant's "natural" products in the future because she believes that natural products are safer and better for her skin.  Ms. Ikeda regularly visits stores where Defendant's products are sold.  However, she is not familiar with all ingredients that cosmetic companies may use in their products, and so she cannot be certain that Defendant's "natural" representations are true when she sees the products on the store shelves.  Moreover, the fact that Ms. Ikeda now knows that phenoxyethanol and the other challenged ingredients are synthetic does not mean that she can simply look at Defendants' labeling to determine whether its natural labeling is accurate.  Companies sometimes substitute one artificial ingredient for another, particularly when there is bad press about the ingredient.  After the harmful effects of phenoxyethanol were publicized, for example, some companies replaced it with other synthetic ingredients.

24.     Plaintiff Melinda Kelly is a citizen of New York, residing in Long Island, New York.  In the last approximately three years, Ms. Kelly made several purchases of KMF Sunscreen and KMF Body Lotion from various stores in and near Long Island, New York.  Prior to purchasing KMF Sunscreen, Ms. Kelly read and saw the front of the product packaging, and relied on the representation and warranty that the product was "obsessively natural" and provided "100% natural mineral advanced protection," or provided a "100% natural mineral hydrating defense." Prior to purchasing KMF Body Lotion, Ms. Kelly saw and read the front of the product packaging, and relied on the representation and warranty that the product would "nourish naturally."  Prior to purchasing, Ms. Kelly also saw, read and relied on the representation and warranty that the product was "naturally effective."  Ms. Kelly understood these representations to mean that KMF Body Lotion did not contain synthetic chemicals.  Ms. Kelly purchased KMF Body Lotion at a substantial price premium, and would not have bought the products had she known that the labeling she relied on was false, misleading, deceptive and unfair.

25.    Ms. Kelly wants to purchase Defendant's "natural" products in the future because she believes that natural products are safer and better for her skin.  Ms. Kelly regularly visits stores where Defendant's products are sold.  However, she is not familiar with all ingredients that cosmetic companies may use in their products, and so she cannot be certain that Defendant's "natural" representations are true when she sees the products on the store shelves.  Moreover, the fact that Ms. Kelly now knows that phenoxyethanol and the other challenged ingredients are synthetic does not mean that she can simply look at Defendants' labeling to determine whether its natural labeling is accurate.  Companies sometimes substitute one artificial ingredient for another, particularly when there is bad press about the ingredient.  After the harmful effects of phenoxyethanol were publicized, for example, some companies replaced it with other synthetic ingredients.

26.    Defendant Aliph is a Delaware corporation that has its principal place of business at 99 Rhode Island Street, San Francisco, CA.

27.    Defendant produces, markets and distributes various consumer skin care and hygiene products in retail stores across the United States.  Among others, those products include KMF Body Lotion and KMF Sunscreen (the "Products").  Defendant knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products contain synthetic ingredients identified in this complaint, which are inconsistent with the product labeling.

## FACTS COMMON TO ALL CAUSES OF ACTION

28.    Consumers have become increasingly concerned about the effects of synthetics and chemical ingredients in cosmetic products.  As a result, consumers are willing to pay, and have paid, a premium for products labeled "natural" over ordinary products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.

29.    The FTC has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers.  If reasonable consumers could interpret a natural claim

as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[7]

30.    Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[8]

31.    Kiss My Face is a brand of skin care and hygiene products manufactured and marketed by Defendant and sold in drug and grocery stores nationwide.  On its website, Defendant touts that "[f]or 35 years, Kiss My Face has been striving to give you naturally effective skin care and body products, using natural ingredients while maintaining a healthy respect for our planet. And to this day, we are obsessively passionate about staying true to our values."[9]

32.    KMF Body Lotion comes in six varieties, all of which contain phenoxyethanol, ethylhexylglycerin, glyceryl stearate SE, synthetic fragrance, polysorbate 60, retinyl palmitate, sodium benzoate, sodium phytate, tocopheryl acetate, panthenol, and/or potassium sorbate:  Olive & Aloe®, Vitamin A & E™, Honey & Calendula™, Tropical Coconut™, Peaches & Créme®, and Lavender Shea™.

33.    KMF Sunscreen products at issue here all contain phenoxyethanol, ethylhexylglycerin, and/or acrylates copolymer.  Those products are Defendant's SPF 30 Mineral Sunscreen Kids Defense Air Powered Spray® and Kids Defense Mineral SPF 30 Sunscreen Lotion.

34.    The front label of every KMF Body Lotion package states prominently in bold lettering the words **"nourish naturally"**:

//

//

---

[7] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

[8] FDA, Small Business & Homemade Cosmetics:  Fact Sheet, *available at* http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7 (last visited April 24, 2017).

[9] http://kissmyface.com/ (last visited April 24, 2017).



35.    Some of the KMF Body Lotion products are labeled with the alternative phrase,

"naturally nourishing."

36.    The labeling has the capacity to confuse or mislead reasonable consumers, including

Plaintiffs, because they expect a product that is labeled or advertised as being "natural," or that it

performs its intended function "naturally," to be free from synthetic ingredients.  The front labeling

further reinforces the impression that the products are all natural with depictions of leaves and

flowers, statements emphasizing natural ingredients like woodland pine or ginseng, or statements

suggesting that the product is suitable for "sensitive skin" (despite containing the synthetic

ingredients at issue here).

37.    The adverb "naturally" is just as capable of confusing or misleading reasonable

consumers as the adjective "natural."  For example, the Vermont legislature recognized this fact

when it passed legislation in 2014 prohibiting a manufacturer from labeling genetically engineered food as "'natural,' 'naturally made,' 'naturally grown,' 'all natural,' or any words of similar import that would have a tendency to mislead a consumer." 2014 Vt. Acts & Resolves No. 120, Sec. 2, § 3043(c). The bottled water company Perrier was the subject of actions by the New York Attorney General, Federal Trade Commission and Food and Drug Administration for misrepresenting that its water was "naturally sparkling," when in fact the carbonation was the result of combining the water with processed gas.[10] In 2015, the Federal Trade Commission filed a complaint against a dietary supplement manufacturer who falsely advertised that its products aided in weight loss by "naturally balance[ing] hormones."[11] Several companies have been the subject of lawsuits where their products contained synthetic ingredients but were marketed as "naturally fresh," "naturally clean," or with statements that the products were made "naturally" or accomplished their purpose "naturally."

38. The natural labeling statements at issue here also are misleading in light of the fact that Defendant manufactures other products with the same and/or very similar "natural" labeling and advertising that do not contain unnatural and synthetic ingredients like those found in KMF Body Lotion and KMF Sunscreen products. For instance, Defendant has marketed and sold a "4-in-1 Moisture Shave" product that bore the same, prominent "nourish naturally" representation on the front of the its labeling. However, that product did not contain any unnatural and synthetic ingredients such as the challenged products here.

39. The KMF Body Lotion has been labeled "nourish naturally" and/or "naturally nourishing" at all times during the last four years, at least. The KMF Body Lotion also has been labeled "naturally effective" during the last four years.

40. Based on the language that appears on the front of each product, Plaintiffs reasonably believed that KMF Body Lotion was free from synthetic ingredients.

---

[10] http://www.nytimes.com/1991/08/21/garden/perrier-pays-new-york-40000-in-labeling-inquiry.html

[11] https://www.ftc.gov/news-events/press-releases/2015/05/ftc-charges-marketers-misleading-claims-their-supplement-causes

41.    As for KMF Sunscreen, Defendant prominently displays that the Products are provide "100% natural mineral advanced protection," or provide a "100% natural mineral hydrating defense":




42.    The phrase "obsessively natural" reinforces the impression that the product is natural. Likewise, the phrases "100% natural mineral advanced protection," and "100% natural mineral hydrating defense" are representations to a reasonable consumer that KMF Sunscreen contains only natural ingredients.  These phrases are misleading to a reasonable consumer because KMF Sunscreen actually contains unnatural and synthetic ingredients.

43.    The KMF Sunscreen Products have been labeled "obsessively natural" and "100% natural mineral advanced protection," or "100% natural mineral hydrating defense" at all times during the last four years, at least.

44.    Based on the language that appears on the front of each product, Plaintiffs reasonably believed that KMF Sunscreen contained only natural ingredients.

45.    Defendant knew that consumers will pay more for a product labeled "natural," and intended to deceive Plaintiffs and putative class members by labeling KMF Body Lotion and KMF Sunscreen as purportedly natural products.

## CLASS ALLEGATIONS

46.    Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class").  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

47.    Plaintiffs Gasser and Ikeda also seek to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

48.    Plaintiff Kelly also seeks to represent a Subclass of all persons in New York who purchased the Products during the class period (the "New York Subclass").  Excluded from the New York Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

49.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

a.      whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.      whether Defendant's conduct was unfair and/or deceptive;

c.      whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiffs and the classes;

d.      whether Defendant breached express warranties to Plaintiffs and the classes;

e.      whether Plaintiffs and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

50.      Plaintiffs' claims are typical of those of other class members because Plaintiffs, like all members of the classes, purchased Defendant's Products bearing the natural representations and Plaintiffs sustained damages from Defendant's wrongful conduct.

51.      Plaintiffs will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the classes.

52.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

53.      The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

54.      The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another

might not.  Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I
### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

55.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56.     Plaintiffs Gasser and Ikeda bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

57.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

58.     Plaintiffs Gasser and Ikeda and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

59.     Plaintiffs Gasser and Ikeda, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

60.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

61.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiffs Gasser and Ikeda and the other members of the California Subclass that the Products are "natural" when in fact they are made with synthetic ingredients.

62.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

63.     On February 3, 2017, Plaintiff Gasser mailed a notice letter to Defendant consistent with California Civil Code § 1782(a), and Defendant received the letter on February 7, 2017.  The

letter was sent on behalf of Gasser and all other persons similarly situated.  In addition, the declaration establishing venue was submitted and previously attached to the original complaint filed in this case.

64.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs Gasser and Ikeda, on behalf of themselves and all other members of the California Subclass, seeks injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

**<u>COUNT II</u>**
**Violation Of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200,** *et seq.*

65.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

66.    Plaintiffs Gasser and Ikeda bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

67.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

68.    Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

69.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

70.    Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "natural" when, in fact, they are made with synthetic ingredients.

71.    Plaintiffs Gasser and Ikeda and the California Subclass lost money or property as a result of Defendant's UCL violations because: because: (a) they would not have purchased the

Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients (b) they paid a substantial price premium compared to other skin care and hygiene products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

**COUNT III**
**Violation Of California's False Advertising Law ("FAL"),**
**California Business & Professions Code §§ 17500, *et seq.***

72.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiffs Gasser and Ikeda bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

74.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

75.     Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products are "natural" when they are not.

76.     Defendant knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

77.     Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiffs Gasser and Ikeda and the California Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients; (b) they paid a substantial price premium compared

to other skin care and hygiene products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV
### (Deceptive Acts Or Practices, New York Gen. Bus. Law § 349)

78.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

79.     Plaintiff Kelly brings this claim individually and on behalf of the New York Subclass against Defendant.

80.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that the Products are "natural," when, in fact, the Products contain synthetic and/or unnatural chemicals.

81.     The foregoing deceptive acts and practices were directed at consumers.

82.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Products to induce consumers to purchase the same.

83.     Plaintiff Kelly and New York Subclass members were injured as a direct and proximate result Defendant's violation because (a) they would not have purchased Defendant's Products had they known the products were not "natural" and in fact contained synthetic and/or unnatural chemicals, (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations, and (c) the Products did not have the characteristics, uses, or benefits as promised, namely that they were "natural."  As a result, Plaintiff Kelly and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as actually sold.

84.     On behalf of herself and other members of the New York Subclass, Plaintiff Kelly seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT V**
**(False Advertising, New York Gen. Bus. Law § 350)**

85.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

86.    Plaintiff Kelly brings this claim individually and on behalf of the members of the proposed New York Subclass.

87.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Products were "natural" when, in fact, they contained synthetic and/or unnatural chemicals.

88.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

89.    This misrepresentation has resulted in consumer injury or harm to the public interest.

90.    Plaintiff Kelly and New York Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased Defendant's Products had they known the products were not "natural" and in fact contained synthetic and/or unnatural chemicals, (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations, and (c) the Products did not have the characteristics, uses, or benefits as promised, namely that they were "natural."  As a result, Plaintiff Kelly and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as actually sold.

91.    On behalf of herself and other members of the New York Subclass, Plaintiff Kelly seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, three times actual damages and reasonable attorneys' fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VI
### Breach of Express Warranty

92.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

93.    Plaintiffs bring this claim individually and on behalf of the proposed Class, California Subclass, and New York Subclass against Defendant.

94.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products are "natural."

95.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs the Class regarding the Products, became part of the basis of the bargain between Defendant and Plaintiffs and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

96.    The Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic.

97.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

98.    On February 3, 2017, a notice letter was sent to Defendant via certified mail that provided notice of Defendant's breach of warranty, violation of the CLRA and all other applicable laws.  The notice letter specifically stated that Defendant has "breached an express warranty to those who purchased the Products," and was sent on behalf of Mr. Gasser "and all other persons similarly situated."  The letter further demanded that within thirty (30) days from that date, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, a complaint seeking damages would be filed.  A similar letter was sent by Ms. Ikeda on April 25,

2017, warning that she was acting on behalf of a putative nationwide class. Defendant responded in writing to both letters.

**COUNT VII**
**Unjust Enrichment**

99.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiffs bring this claim individually and on behalf of the proposed Class, California Subclass, and New York Subclass against Defendant.

101.    Plaintiffs and class members conferred benefits on Defendant by purchasing the Products.

102.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiffs and members of the classes because they would not have purchased the Products if the true facts had been known.

103.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

**COUNT VIII**
**Fraud**

104.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

105.    Plaintiffs bring this claim individually and on behalf of the proposed Class, California Subclass, and New York Subclass against Defendant.

106.    As discussed above, Defendant provided Plaintiffs and Class members with false or misleading material information about the Products by representing that they are "natural." Defendant made that misrepresentation knowing it was false.

107.    Defendant's misrepresentations, upon which Plaintiffs and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and class members to purchase the Products.

108.    Defendant's fraudulent actions harmed Plaintiffs and class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class, California Subclass, and New York Subclass as follows:

A.    For an order certifying the nationwide Class, California Subclass and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as Class and Subclass representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class and Subclass members;

B.    For an order finding in favor of Plaintiffs, the nationwide Class, the California Subclass, and the New York Subclass on all counts asserted herein;

C.    For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.    For injunctive relief enjoining the illegal acts detailed herein;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief; and

G.    For an order awarding Plaintiffs their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: January 28, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____/s/ Joel D. Smith_____
            Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)

Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
           jsmith@bursor.com
           ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone: (619)272-7014
Facsimile:  (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiffs*